PEOPLE v CARTER

Docket No. 113817. Argued January 12, 2000 (Calendar No. 9). Decided
    June 27, 2000. Rehearing denied 463 Mich 1210.

Vincent Carter was convicted by a jury in the Detroit Recorder's
    Court of first-degree felony murder, armed robbery, and possession
    of a firearm during the commission of a felony. During jury deliber-
    ations, the court, Karen M. Fort Hood, J., refused the jury's request
    to review the testimony of four witnesses. The Court of Appeals,
    JANSEN, P.J., and D. E. HOLBROOK JR., and MACKENZIE, JJ., reversed and
    remanded for a new trial in an unpublished opinion per curiam,
    concluding that the trial court's response to the jury's request had
    impermissibly foreclosed the possibility of having the testimony
    reviewed at a later time. It further found that the trial court's error
    was not harmless (Docket No. 199979). The people appeal.

    In an opinion by Chief Justice WEAVER, joined by Justices TAYLOR,
    CORRIGAN, YOUNG, and MARKMAN, the Supreme Court held:

    Although the trial court violated MCR 6.414(H) by foreclosing to
    the jury the possibility of later reviewing the requested testimony,
    its error does not warrant reversal of the defendant's convictions
    because defense counsel specifically approved the trial court's
    refusal of the jury's request and the court's subsequent instruction
    to the jury. Thus, the defendant waived his rights under the rule,
    and the waiver extinguishes any error and precludes the defendant
    from raising the issue on appeal.

    Reversed.

    Justice KELLY, dissenting, stated that, although defense counsel
    did not object, the trial judge's refusal to allow the jury to review
    vital testimony was a violation of MCR 6.414(H), and constituted
    error requiring reversal.

    While a trial court's refusal to allow the jury to review testimony
    should not result in automatic reversal, refusing, as in this case, to
    allow a jury's reasonable request to review a witness' testimony, in
    violation of MCR 6.414(H), when the outcome of the case hinges on
    the credibility of the witness, does merit reversal. This pertains
    even if the error is unpreserved or if defense counsel acquiesces in
    the trial court's error. Asking the jury to formulate a just verdict

without assuring it access to all vital facts bodes against a reliable result.

Justice CAVANAGH, dissenting, stated that the trial judge's refusal to allow the jury to review vital testimony was a violation of MCR 6.414(H), *People v Howe*, 392 Mich 670 (1974), and *People v Smith*, 396 Mich 109 (1976), and constituted error requiring reversal under *United States v Olano*, 507 US 725 (1993).

MCR 6.414(H) provides that if, after beginning deliberation, the jury requests a review of certain testimony or evidence, the trial court may not refuse if the request is reasonable. It may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed. In this case, the jury's request was not unreasonable. The judge did not send the jurors back to deliberate with the opportunity to review the testimony if they could not resolve their need. While the court reporter could have read the relevant testimony to the jury, the judge did not so inform the jury. The judge had a duty to refrain from foreclosing the possibility of having the testimony read, and clearly breached that duty.

Although defense counsel may have acquiesced to the proposed ruling from the judge regarding reading back the testimony, the judge should not have put counsel in the position of having to object to a suggestion that violated the court rule. Acquiescence under these circumstances is questionable. Consistent with *Olano*, the case should be approached as involving a violation of MCR 6.414, which directs that a trial court may not refuse a reasonable request and may not foreclose later review of testimony.

The judge's instruction violated the clear current law as stated in MCR 6.414(H), *Howe*, and *Smith*, and affected the defendant's substantial rights. The refusal to allow the jury to review the testimony of key witnesses was a violation of defendant's right to have the jury base its verdict on a clear understanding of the facts. The error is the sort that compromises the fairness, integrity, and truth-seeking function of a jury trial, warranting reversal.

The majority provides that the crucial factor distinguishing this case from *Howe* and *Smith* is defense counsel's acquiescence to the court rule violation. Therefore, had defense counsel remained silent, thus forfeiting the error, or had he objected, thus preserving the error, then under controlling case law he would be granted a new trial. Given the devastating result of defense counsel's acquiescence under the majority analysis, the defendant was denied his Sixth Amendment right to effective assistance of counsel and, at the very least, is entitled to a *Ginther* hearing on the issue.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief, Research, Training and Appeals, and *Thomas M. Chambers*, Assistant Prosecuting Attorney, for the people.

*Robert M. Morgan* for the defendant-appellee.

WEAVER, C.J. Following a jury trial, defendant was convicted of first-degree (felony) murder, armed robbery, and possession of a firearm during the commission of a felony in the shooting death of a Detroit convenience store clerk.[1] The issue before the Court is whether defendant's convictions must be reversed because the trial court refused the jury's request for the testimony of four witnesses, in violation of MCR 6.414(H).[2]

Although the trial court violated the court rule by foreclosing to the jury the possibility of later reviewing the requested testimony, we hold that this error does not warrant reversal of defendant's convictions because defense counsel specifically approved the trial court's refusal of the jury's request and the

---

[1] Defendant was sentenced to imprisonment for natural life without the possibility of parole for the felony-murder conviction. He was also sentenced to the mandatory term of two years' imprisonment on the felony-firearm conviction. His sentence of 20 to 40 years' imprisonment on the underlying armed robbery conviction was vacated.

[2] MCR 6.414(H) states:

If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may order the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

court's subsequent instruction to the jury. Thus, defendant waived his rights under the rule. This waiver extinguishes any error and precludes defendant from raising the issue on appeal.

I

On March 20, 1992, Nidhal Jarbo and her brother-in-law, Hani Naemi, were working at the family store, the Eight Mile Express. Defendant was a regular customer of the store. As Ms. Jarbo left the store to go to the bank, she observed the defendant outside the store with what appeared to be a gym bag. When she returned to the store about fifteen or twenty minutes later, the police were present; Hani Naemi had been shot dead in the cooler.

Police suspected defendant, but released him because there was not sufficient evidence to charge him with the crime. Shortly thereafter, defendant was imprisoned on an unrelated parole violation. While imprisoned in the Muskegon Correctional Facility, defendant shared a cell with Norman Mackin. Mr. Mackin testified that sometime in February 1993, defendant divulged to him his role in an unsolved Detroit murder. The details provided by Mr. Mackin were sufficient to permit the police to tie defendant to the murder of Mr. Naemi.

At trial, defendant's theory was that, as defendant's cellmate, Mr. Mackin had access to the grievance papers that defendant was drafting in an attempt to have the fact that he was a suspect in the Detroit murder removed from his record. Defendant alleged that these papers would have provided Mr. Mackin with enough information to fabricate a story implicat-

ing defendant.[3] The jury rejected this theory and convicted defendant on all three counts.

Defendant appealed his convictions to the Court of Appeals, arguing, among other things, that the trial court had violated MCR 6.414(H) by refusing the jury's request, received fifteen minutes into deliberations, for the testimony of four witnesses, including that of Mr. Mackin.[4] The Court of Appeals agreed, concluding that the trial court's response to the jury's request had impermissibly foreclosed the possibility of having the testimony reviewed at a later time. The Court of Appeals then applied a harmless error analysis, finding that it could not conclude that the trial court's error was harmless. Consequently, it reversed defendant's convictions and remanded the case for a new trial.

Both parties appealed to this Court, which granted the prosecutor's application for leave to appeal and denied defendant's applications. 461 Mich 880 (1999).

II

The court rule at issue in this case, MCR 6.414(H), states:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court must exercise its discretion to ensure fairness and to refuse unreasonable

---

[3] At a subsequent *Ginther* hearing (see footnote 14) defense counsel explained that the grievance papers were not introduced into evidence because Mr. Mackin was able to testify regarding facts about the incident that were not contained in the grievance reports. *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] In response to the jury's request, the trial court explained that the transcripts would not be typed for weeks and instructed the jury to rely on their collective memories.

requests, but it may not refuse a reasonable request. The court may order the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.[5]

In the present case, about fifteen minutes after the jury began to deliberate and shortly before breaking for lunch, the jury sent out a note requesting "Dale Collins' testimony, Mackin's testimony, pictures and illustrations, Presley's testimony and Rice's testimony."[6] The following colloquy between the trial court and the attorneys ensued:

> *The Court*: . . . Now, obviously what I will do when they come back is I will sit them down in the jury box and respond, as to Dale Collins' testimony, Mackin's testimony, Presley's testimony and Rice's testimony, as I indicated in the beginning, they are to rely on their collective memories, there's no testimony they can read from.

*   *   *

> *The Court*: And as to the pictures and illustrations that have been admitted into evidence, are they already in there?
> *Mr. Cox*[7]: They're in the folder right there.
> *The Court*: All right. So both counsel have no problem with that?
> *Mr. Cox*: No.
> *The Court*: The exhibits that have been admitted and they're all in the folder.
> *Mr. Larson*[8]: Right here.

---

[5] This rule is consistent with case law. See *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974).

[6] Collins, Presley, and Rice were three of nine police officers who testified.

[7] Mr. Cox was the assistant prosecuting attorney.

[8] Mr. Larson was defense counsel.

After returning from the lunch recess, the trial court once again discussed the matter with the attorneys outside the jury's presence:

> *The Court*: . . . Back on the record. Dealt with the note pretty much at lunch, prior to breaking for lunch. The court received a note at 12:50, right before it was time for the jurors to go to lunch, and we indicated we would bring them back at 2:00 and address the note. The note reads as follows: Dale Collins' testimony, Mackin's testimony, pictures and illustrations, Presley's testimony and Rice's testimony.
>
> And what we decided prior to lunch, Counselors, all of us together I think, is that we would—all of the admitted exhibits had been placed in a folder which we will submit to the jury after the jury—the court calls the jurors out and sits them in their seats and indicates to them that as to all of the testimony that they've requested, as I indicated in the beginning, there are no—the transcripts are not typed and will not be typed for some weeks and months to come. They must rely on their collective memories. Any input, any—anything else?
>
> *Mr. Larson*: Satisfaction with that part of it, Judge.
>
> The second part, may I go into that? They asked for illustrations and things of that nature.
>
> *The Court*: M'hm.
>
> *Mr. Larson*: You're going to instruct them that other than the evidence that has been admitted—I don't know if they're requesting other notes or pictures.
>
> *The Court*: Well, what I will say to them with regard to the request for the pictures and illustrations, all of the exhibits that have been admitted into evidence and have been placed into a folder and we'll send them with you into the jury room. Is that all right?
>
> *Mr. Larson*: That's fine, yes.

The trial court then had the jury brought into the courtroom and instructed them as follows:

The note reads as follows: Dale Collins' testimony, Mackin's testimony, pictures and illustrations, Presley's testimony and Rice's testimony. Let me indicate to you that, first of all, I'll deal with the request for the pictures and illustrations. The counselors have placed all of the exhibits that have been admitted into evidence in a folder, and when you return to the jury room, you'll be able to take all of the exhibits that have been admitted into evidence with you for your review as requested.

With regard to the remainder of the note, which again asks for various people's testimony, again, that being Dale Collins, Mack [sic] and Presley and Rice's testimony, one of the things the court explained to you in the beginning, that the transcripts will not be typed for some weeks and months way into the future and you must listen very carefully because you must rely on your collective memories to resolve any issues with regard to that.[9]

So that is the court's response to your question. You now may return to the jury room and resume your deliberations.

The prosecution concedes that the trial court's instructions to the jury violated MCR 6.414(H).[10] How-

---

[9] At the beginning of voir dire, the trial court had explained that the jurors must speak loudly and clearly so that the court reporter could take down everything that was being said. The trial court also gave the following cautionary instruction:

And even though [the court reporter's] taking down what's being said, ladies and gentlemen, you're going to have to listen very carefully because you will not have transcripts to refer to during these proceedings. Those transcripts aren't typed for some weeks and months into the future. So again, you're going to have to listen very, very carefully during these proceedings.

[10] While it is true that trial transcripts often are not prepared until well after trial, we caution against instructing the jury in this manner as such instruction forecloses to the jury the possibility of later reviewing the requested testimony, e.g., by having the court reporter read back the testimony, and consequently, violates the court rule. However, we also note that, given that the jury made the request for the testimony of four witnesses only fifteen minutes into deliberations, the trial court could have properly refused the request and instructed the jury to continue deliberat-

ever, the prosecution argues that defendant waived the issue when defense counsel expressed satisfaction with the trial court's refusal of the jury's request and its subsequent instruction to the jury. We agree.

The rule that issues for appeal must be preserved in the record by notation of objection is a sound one. *People v Carines*, 460 Mich 750, 762-765; 597 NW2d 130 (1999). Counsel may not harbor error as an appellate parachute. *People v Pollick*, 448 Mich 376, 387; 531 NW2d 159 (1995), quoting *People v Hardin*, 421 Mich 296, 322-323; 365 NW2d 101 (1984). "Deviation from a legal rule is 'error' unless the rule has been waived." *United States v Olano*, 507 US 725, 732-733; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

In two recent cases with similar facts, the Court of Appeals has agreed with the argument advanced by the prosecution in the present case. In *People v Fetterley*, 229 Mich App 511, 518-519; 583 NW2d 199 (1998), the trial court denied the jury's request for a transcript of the testimony of one of the witnesses. The court explained that it did not have a transcript and instructed the jury to remember the testimony as best it could. Both attorneys indicated that they had no objection to the trial court's decision. *Id.*, 519. Rejecting the defendant's argument that this constituted an error requiring reversal pursuant to MCR 6.414(H), the Court of Appeals explained, "defense counsel expressly acquiesced to the court's handling of the jury's request. A defendant may not waive objection to an issue before the trial court and then raise it as an error" on appeal. *Id.*, 520. The Court of

---

ing had it done so in a manner which did not foreclose the possibility of having the testimony reviewed at a later time.

Appeals made a similar conclusion in *People v Craw-ford*, 232 Mich App 608, 620; 591 NW2d 669 (1998), where, again, the matter was discussed between trial counsel and the trial court, and counsel agreed with respect to how the jury would be instructed.

When asked by the trial court in the present case for a response to its proposed instructions, defense counsel expressed satisfaction with the trial court's decision to explain that the transcripts were not available and that the jury must rely on its collective memory. Because defense counsel approved the trial court's response, defendant has waived this issue on appeal.

Waiver has been defined as "the 'intentional relinquishment or abandonment of a known right.'" *Carines, supra* at 762, n 7, quoting *Olano, supra* at 733. It differs from forfeiture, which has been explained as "the failure to make the timely assertion of a right." *Id.* "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *United States v Griffin*, 84 F3d 912, 924 (CA 7, 1996), citing *Olano, supra* at 733-734. Mere forfeiture, on the other hand, does not extinguish an "error." *Olano, supra* at 733; *Griffin, supra* at 924-926.

It is the difference between waiver and forfeiture that makes the present case distinguishable from the cases of *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974), and *People v Smith*, 396 Mich 109; 240 NW2d 202 (1976). While the present case deals with waiver, *Howe* and *Smith* addressed situations in which the error was forfeited. *Griffin* provides a clear example of the effect of this difference. In *Griffin*, the court

concluded that the defendant waived any objection to a jury instruction because his counsel affirmatively approved the instruction. *Griffin, supra* at 923-924. This approval extinguished any error. *Id.* However, counsel's approval of the instruction did not preclude the court from reviewing a codefendant's challenge to the instruction. Codefendant's counsel, rather than affirmatively approving the instruction, failed to object to the instruction. The failure to object qualified as a forfeiture, and the court reviewed the instruction for plain error. *Id.*, 924-926.

Justice KELLY, in her dissent, ignores this crucial distinction. She characterizes the majority opinion as holding "that defense counsel's *failure to object* when the judge announced her decision foreclosed reversal by this Court," and she would analyze the issue under the standard for unpreserved, forfeited error. *Post* at 222, 224 (emphasis added). This is clearly incorrect. Defense counsel in the present case did not *fail to object*. Rather, counsel *expressly approved* the trial court's response and subsequent instruction. This constitutes a waiver that *extinguishes* any error. Thus, this case does not concern unpreserved error where no timely objection was made.[11]

---

[11] Contrary to Justice KELLY's assertion, our opinion does not contradict the principles established by the cases she cites.

First, the crucial distinction between waiver and forfeiture makes much of the case law on which she relies inapposite. *People v Dorrikas*, 354 Mich 303; 92 NW2d 305 (1958), and *People v Snow*, 386 Mich 586; 194 NW2d 314 (1972), both concerned situations where counsel had failed to object, not situations in which counsel had affirmatively approved the trial court's action. Moreover, both cases note that it is only in unusual circumstances that the Court will consider unpreserved error. *Snow, supra* at 591; *Dorrikas, supra* at 316-317. In *People v Shirk*, 383 Mich 180, 189-193; 174 NW2d 772 (1970), counsel actually preserved the error by objection.

Justice CAVANAGH, in his dissent, would conclude that the error could not be waived.[12] We disagree with this approach. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." *Olano, supra* at 733. It is presumed that waiver is available in " 'a broad array of

---

*People v Harrison*, 386 Mich 269; 191 NW2d 371 (1971), involved the defendant's constitutional right to a speedy trial. The defendant's trial was adjourned on six separate occasions, including one occasion in which the trial was adjourned until the expiration of the defendant's "appeal time" in another case. *Id.*, 274. The defendant was advised by his attorney that the remaining charge against him would be dropped if he did not file an appeal from his other conviction. *Id.* Although the defendant failed to demand trial or move to have the charge against him dismissed, the Court allowed the issue to be considered because the trial court's action served to chill the defendant's exercise of his right to appeal. *Id.*, 275-276. (Defendant had a right to appeal under the Michigan Constitution. See Const 1963, art 1, § 20.) The present case does not implicate similar constitutional rights.

Finally, *People v Lenkevich*, 394 Mich 117; 229 NW2d 298 (1975), concerned self-defense instructions. The Court did consider the erroneous instruction, despite the fact that counsel expressed satisfaction with the jury instruction. However, the instruction was relevant to one of the very elements required to be established to sustain the plea of self-defense: that the defendant must have had no way by which she could have retreated to a place of safety. The Court rejected this element and held that when an attack occurs in one's home by an assailant who has a right to be on the premises, the assailed need not "retreat to the wall" before defending herself. *Id.*, 121. The instruction given in the present case does not concern an element of the crime or an affirmative defense.

[12] Justice CAVANAGH also suggests that the trial court's error was compounded when the trial court refused to permit the jurors to take notes. We observe that MCR 6.414(C) places the decision regarding note taking with the trial court and states in pertinent part:

The court *may* permit the jurors to take notes regarding the evidence presented in court. If the court permits note taking, it must instruct the jurors that they need not take notes and that they should not permit note taking to interfere with their attentiveness. [Emphasis added.]

constitutional and statutory provisions' . . . ." *New York v Hill*, 528 US 110, 114; 120 S Ct 659; 145 L Ed 2d 560 (2000), quoting *United States v Mezzanatto*, 513 US 196, 200; 115 S Ct 797; 120 L Ed 2d 697 (1995). While the defendant must personally make an informed waiver for certain fundamental rights such as the right to counsel or the right to plead not guilty, for other rights, waiver may be effected by action of counsel. *Id.*, 528 US 114-115.

> "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." As to many decisions pertaining to the conduct of the trial, the defendant is "deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" Thus, decisions by counsel are generally given effect as to what arguments to pursue, . . . what evidentiary objections to raise, . . . and what agreements to conclude regarding the admission of evidence . . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last. [*Id.* (citations omitted).]

A defendant does not have a right to have a jury rehear testimony. Rather, the decision whether to allow the jury to rehear testimony is discretionary and rests with the trial court. MCR 6.414(H); *Howe, supra* at 675.[13] In our opinion, the decision whether to oppose the trial court's refusal of the jury's request for testimony is akin to an evidentiary decision. Because counsel has full authority to manage the con-

---

[13] Many other states also treat this decision as a discretionary one. See generally 75B Am Jur 2d, Trial, §§ 1685-1688, pp 467-472; anno: *Right to have reporter's notes read to jury*, 50 ALR2d 176.

duct of the trial and to decide matters of trial strategy, we conclude that in this instance, waiver could be effected by the action of defense counsel. *Hill, supra*, 528 US 115; see also 3 LaFave, Israel & King, Criminal Procedure (2d ed), § 11.6, p 593.

In the present case, counsel clearly expressed satisfaction with the trial court's decision to refuse the jury's request and its subsequent instruction. This action effected a waiver. Because defendant waived, as opposed to forfeited, his rights under the rule, there is no "error" to review.[14]

III

We conclude that, although the trial court violated the court rule by foreclosing to the jury the possibility of later reviewing the requested testimony, this error

---

[14] Defendant argues, and Justice CAVANAGH agrees, that defense counsel's acquiescence denied defendant his right to effective assistance of counsel. However, we point out that at the *Ginther* hearing, both defendant himself and his appellate counsel questioned defendant's trial counsel about various claimed errors. At no point was there questioning directed to the issues surrounding the jury's request to review testimony. Defendant, assisted by appellate counsel, had the opportunity at this hearing to raise any and all perceived errors of his trial counsel and chose not to address the issue of his counsel's actions in response to the jury request to review certain testimony. This choice indicates that defendant and his appellate counsel did not believe that the waiver at trial constituted ineffective assistance of counsel.

Defendant's failure to explore at the *Ginther* hearing trial counsel's conduct concerning the trial court's refusal to reread the requested testimony is strongly suggestive that trial counsel's conduct was the product of trial strategy. Although defense counsel sought to attack Mackin's credibility during trial, and the rereading of his testimony might have reinforced that defense strategy, it is also true that having the jury revisit Mackin's testimony would reexpose the jury to his very damaging testimony. Thus, it is entirely understandable why trial counsel was not questioned about this issue at the *Ginther* hearing—the very place where one would otherwise have expected the issue of claimed ineffective assistance of counsel to have been thoroughly explored.

does not warrant reversal of defendant's convictions because defense counsel specifically approved the trial court's refusal of the request and its subsequent instruction to the jury. Defendant's waiver of his rights under the rule has extinguished any error. Therefore, we reverse the judgment of the Court of Appeals and reinstate defendant's convictions.

TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with WEAVER, C.J.

KELLY, J. (*dissenting*). I would affirm the Court of Appeals decision reversing defendant's conviction for felony-murder. Although defense counsel did not object to it, the trial judge's refusal to allow the jury to review vital testimony was a violation of MCR 6.414(H), and constituted error requiring reversal. MCL 769.26; MSA 28.1096; *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974).

I

At the beginning of the proceedings, the judge told the jury that transcripts of the testimony would not be available during the trial. Also, she exercised her discretion not to permit the jury to take notes. MCR 6.414(C). Later, she refused to allow the jury to review the testimony of Norman Mackin and three police officers, leaving to its "collective memor[y]" the jury's determination of Mackin's credibility.

Mr. Mackin's testimony, alone, occupied over one hundred pages of trial transcript. He often rambled and related tangential matters.[1] He offered no fewer

---

[1] The trial judge, herself, acknowledged that Mackin was "rather talkative."

than five reasons, not all mutually consistent, why he had decided to testify against his former cellmate.[2]

The jury also requested the testimony of three of the officers involved with the case. Each had testified about matters relating to Mackin's credibility.[3] Without Mackin's testimony, the police could not have presented a prima facie case.

As previous opinions of this Court have pointed out, during deliberations a jury may disagree about or fail to recall collectively how a particular witness testified. *Howe, supra* at 676; *People v Smith*, 396 Mich 109; 240 NW2d 202 (1976). MCR 6.414(H) assists in these situations, directing that a trial judge may not refuse a jury's reasonable request for a review of the testimony.

In this case, the jury's request was reasonable. Satisfying it would have helped the jury assess the numerous conflicts in Mackin's long-winded testimony.

II

The trial court's refusal to allow the jury to review the requested testimony violated MCR 6.414(H). The

---

[2] At one point, Mackin indicated that he was testifying because the victim's family deserved justice. He wanted a retrial of the charges against him, pictures of the scene of the crime for which he was convicted, and protection in the federal prisoner system. He wanted a letter to the judge who sentenced him, requesting credit for good time on his current sentence.

[3] Lieutenant William Presley interviewed Mackin and took his initial statement. Officer Collins also spoke with him on several occasions, and was present when the family was allowed to plead with him to testify. Lieutenant William Rice testified that none of the facts of the murder were given to the Department of Corrections. He thereby rebutted defense counsel's theory that Mackin saw defendant's parole records and learned about the murder in that manner, rather than in discussions with Mackin.

majority finds that defense counsel's failure to object when the judge announced her decision foreclosed reversal by this Court. I disagree.

This Court can and should correct unpreserved error in pleadings and procedure when it has caused a miscarriage of justice. MCL 769.26; MSA 28.1096. Upon occasion, we have found that a judge's foreclosure of a jury's review of testimony merits reversal, even if defense counsel has neglected to object. *Howe, supra* at 678. Although the majority cites *Howe* in a footnote, it fails to offer a convincing reason to depart from *Howe's* result.[4]

In footnote 10 of its opinion, the majority recognizes the gravity of the error and the clear violation of the court rule. The footnote admonishes trial courts not to foreclose a jury's review of trial testimony, as happened in this case. I join in that.

However, a truly meaningful admonition, one more likely to alter the course of future trials, would lie in finding that the error requires reversal. A miscarriage of justice is invited when a jury is pressed to arrive at a verdict, after indicating it has serious unanswered questions concerning key evidence presented. Also, I caution against the appearance of sending a message to trial courts that expediting matters on the court's docket is paramount to assuring reliable jury verdicts.

---

[4] I do not propose a rule of automatic reversal in cases where a judge refuses to allow a jury to rehear testimony. However, the error in this case merits reversal because here, as in *Howe*, the jury's decision pivoted on whether it found credible Mackin's extensive and lengthy testimony. *Id.* at 678.

III

The majority characterizes defendant's failure to object as a waiver of the error, rather than a forfeiture. According to the majority, a waiver extinguishes appellate review, distinguishing this case from *Howe*.

This Court may review and correct even unpreserved trial error if, otherwise, a miscarriage of justice would result. MCL 769.26; MSA 28.1096. In *People v Dorrikas*, 354 Mich 303, 316; 92 NW2d 305 (1958), we explained:

> Ordinarily where no timely objection was made to the introduction of such testimony and no request to charge was made, this Court would not examine the points relied upon for reversal, and except under unusual circumstances we have no disposition to relax this rule. Nevertheless, as in a number of previous cases, this Court, in the exercise of supervisory control over all litigation, has often asserted the right to consider manifest and serious errors although objection was not made by the party who appeals. The inherent power of this Court to prevent fundamental injustice is not limited by what appellant is entitled to as a matter of right.

Contrary to this principle, the majority asserts that defendant, acting through his attorney, relinquished his right to appellate review of this issue. In doing so, the majority relies on federal precedent relating to appellate procedure. It produces no Michigan law to support its assertion that, if defense counsel waives defendant's right to trial error, this Court cannot review it, even if a fundamental injustice results. This conclusion improperly limits our power to ensure justice is done; it contradicts several of our earlier opin-

ions[5] and the plain language of MCL 769.26; MSA 28.1096.

When a judge instructs a jury in a manner that prejudices a defendant, the fact that defense counsel expresses satisfaction with the instruction given does not preclude review by this Court. *People v Lenkevich*, 394 Mich 117, 122-123; 229 NW2d 298 (1975). " 'Defendant has a right to have a properly instructed jury pass upon the evidence.' " *Id.* at 123. Similarly, if a judge prejudices a party by foreclosing review of a transcript in violation of MCR 6.414(H), a subsequent unreliable verdict should not stand, merely because of defense counsel's acquiescence.

I would review the unpreserved error in this case under the standard we enunciated in *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999): "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error ' "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence.' " *Carines* at 763. Here, the trial court's refusal of the jury's request for clarification of evidence compromised the integrity and public reputation of the judicial proceedings.

IV

Refusing to allow the jury to review a witness' testimony, in violation of MCR 6.414(H), when the outcome of the case hinges on the credibility of the wit-

---

[5] See *People v Snow*, 386 Mich 586, 591; 194 NW2d 314 (1972); *People v Harrison*, 386 Mich 269, 275; 191 NW2d 371 (1971); *People v Shirk*, 383 Mich 180, 194; 174 NW2d 772 (1970).

ness, merits reversal. This pertains even if the error is unpreserved or if defense counsel acquiesces in the trial court's error. Asking the jury to formulate a just verdict without assuring it access to all vital facts bodes against a reliable result.

The decision of the Court of Appeals reversing defendant's conviction should be affirmed.

CAVANAGH, J. (*dissenting*). I would affirm the Court of Appeals reversal of defendant's conviction. The trial judge's refusal to allow the jury to review vital testimony was a violation of MCR 6.414(H), *People v Howe*, 392 Mich 670; 221 NW2d 350 (1974), and *People v Smith*, 396 Mich 109; 240 NW2d 202 (1976), and constituted error requiring reversal. *United States v Olano*, 507 US 725; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

I

MCR 6.414(H) provides:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court *must* exercise its discretion to ensure fairness and to refuse *unreasonable* requests, but *it may not refuse a reasonable request*. The court may order the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed. [Emphasis added.]

During voir dire, the judge told the jury that she would not allow them to review transcripts of testimony. Despite this instruction, the jury requested testimony. In response, the judge denied the request and reminded them of her earlier instruction. She did not, as the rule allows, send them back to deliberate with

the opportunity to review the testimony if they could not resolve the need.

Moreover, she did not refuse an "unreasonable request." In fact, it appears that she thought any request would be unreasonable because of the time it would take to have transcripts typed. As the majority points out, the court reporter could have read the relevant testimony to the jury. The judge did not inform the jury of this fact. Instead, she told them that it would be impossible for them to review the transcripts as they would not be available for "weeks and months." The prosecutor argues that there is no duty for the judge to inform the jury sua sponte of this possibility. This is true, but there is a duty to refrain from foreclosing the possibility of having the testimony read. The trial judge clearly breached this duty.

II

In *People v Howe*, this Court stated that when a jury requests that testimony be read back, both the reading and extent of the reading is a matter confided to the sound discretion of the trial judge, and that the jury will at times require testimony read back to it to resolve a disagreement or correct a memory failure. This Court explained that the trial court must exercise its discretion to assure fairness and to refuse unreasonable requests, but it cannot simply refuse to grant the jury's request for fear of placing too much emphasis on the testimony of one or two witnesses. 392 Mich 676. *Howe* held that it was an abuse of discretion to fail to properly consider a reasonable request by the jury to rehear testimony of the only

two witnesses to the events surrounding the death of the victim. *Howe* also stated that failure to object was irrelevant when the actions of the judge bypassed the adversary function where, after the judge informed counsel of the jury's request, he immediately denied the request.

In the instant case, the judge abused her discretion, in violation of *Howe*, by failing to properly consider the jury request to rehear testimony. Before a request was made, the judge told the jury that she would not allow testimony review. She also exercised her discretion not to permit the jury to take notes. MCR 6.414(C). Regardless, the jury requested the testimony of four of the eighteen witnesses. The judge told counsel that she would deny the request, then asked whether there was any input, and proceeded to respond in the manner that she had indicated. This left the jury to rely on its "collective memories" in order to determine the facts.

It was, however, reasonable for the jury to request a review of Mackin's testimony. Mackin, the jailhouse informant, was crucial to the prosecution. In fact, his testimony was the only direct evidence against defendant. Mackin's claim that defendant confessed his crime allowed the prosecution to press charges against defendant after four years of investigation. Because he was the prosecution's key witness, defendant's strategy was to impeach his credibility and argue that he had received his information about the crime from sources other than defendant. This testimony, alone, occupied over one hundred pages of trial transcript. Moreover, his credibility was highly

questionable. He offered several motivations for his decision to testify against his former cellmate.[1]

It was similarly reasonable for the jury to request testimony of the officers whose testimony related directly to Mackin's credibility. Lieutenant William Presley had interviewed Mackin and took his initial statement. Officer Collins also spoke with him on several occasions, and was present when the family was allowed to plead with him to testify. Both Rice and Collins were questioned regarding whether information about the crime was communicated to other agencies. This testimony related to the defense theory that Mackin had seen defendant's parole records and had learned about the crime in that manner rather than through defendant's alleged confession to Mackin. The jury requested testimony only of the witnesses who provided direct testimony in support or contravention of the respective theories presented by the prosecution and defense.

In *People v Smith*, this Court unanimously reaffirmed *Howe* and held that where the judge completely foreclosed the opportunity of having testimony reread, reversal was necessary. In *Smith* there was no jury request to have testimony reread. However, before the jury deliberated, the judge told them that he would not reread any testimony and told them not to ask for it. 396 Mich 110.

---

[1] At one point, Mackin indicated that he was testifying because the victim's family deserved justice. He also explained that he wanted a retrial of the charges against him, pictures of the scene of the crime for which he was convicted and protection in the federal prisoner system. Additionally, he wanted a letter sent to his sentencing judge requesting credit for good time on his current sentence.

In the instant case, the judge similarly foreclosed the jury from reviewing testimony. Even so, the jury's apparent need to review testimony led it to make the request. This was erroneously denied and, under *Smith*, reversal is necessary.[2]

III

The majority distinguishes our controlling case law by stating that *Howe* and *Smith* dealt with "forfeiture" of trial error, whereas the instant defendant "waived" the error. This "waiver," according to the majority, extinguishes any error (citing *Olano, supra*).

Though defense counsel may have acquiesced to the proposed ruling from the judge regarding the testimony read back, the judge should not have put counsel in the position of having to object to a suggestion that violated the court rule. *Olano*, 507 US 742 (Kennedy, J., concurring). Moreover, defense counsel was placed in a position to object after the judge had twice unilaterally stated that she would not allow the testimony to be read back. Acquiescence under these circumstances is questionable.

Even if we were to presume that defense counsel accepted the denial of the jury request, the majority fails to properly analyze the case under the principles stated in *Olano*; the federal case on which it relies. In *Olano*, the trial court erroneously allowed two alter-

---

[2] The prosecutor also points to both the amount of time the jury deliberated, and the time that it took for the jury to request a rereading of testimony, for support that the jury did not need to resolve disagreement or correct memory failure regarding the testimony. The majority agrees that this is an appropriate consideration when determining whether to refuse the request. However, in *Smith*, this Court stated that it is conjectural and improper to look at the time of jury deliberation as support for the supposition that the jury was not confused about the testimony. 396 Mich 111.

nate jurors to attend, but not participate in, delibera-
tions along with the regular jurors. *Id.* at 727. This
violated the Federal Rule of Criminal Procedure 24(c)
as quoted in *Olano, supra* at 730.[3] The United States
Supreme Court described the case as involving a
deviation from, and violation of, a "rule" rather than a
violation of a "right." *Id.* at 737, 739. The case was
then analyzed under waiver principles. "Waiver" was
defined as the "intentional relinquishment . . . of a
known *right.*" *Id.* at 733.

The instant majority provides that defendant did
not have "a right to have a jury rehear testimony."
*Ante* at 218. Such phrasing of the right at issue neces-
sarily leads the majority to its conclusion. However,
the *Olano* Court did not analyze whether the defend-
ants had a "right to have only twelve jurors in the
room during deliberations." Instead, the Court
seemed to imply that a violation of the court rules is
a violation of general due process rights protected by
the rules. While I agree that there are varying rights
and different waiver requirements, I cannot join in the
view that defendant did not have a right to have the
trial court follow the court rules enacted by this
Court. Under our case law in this area, and under
these facts, this right was not waivable.

Consistent with *Olano,* I would approach this as a
violation of MCR 6.414, which directs that the trial

---

[3] "The court may direct that not more than 6 jurors in addition to
the regular jury be called and impanelled to sit as alternate jurors.
Alternate jurors in the order in which they are called shall replace
jurors who, prior to the time the jury retires to consider its verdict,
become or are found to be unable or disqualified to perform their
duties. . . . *An alternate juror who does not replace a regular
juror shall be discharged after the jury retires to consider its ver-
dict.*" [Emphasis added.]

court may "not refuse a reasonable request" and may not foreclose later review of the testimony. The Court explained that a court must first determine whether the right waived is waivable. *Id.* at 733. Waiver is the "intentional relinquishment . . . of a known right." *Id. "Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake." [Id.* (emphasis added).]

MCR 6.414(H) is the result of a judgment by this Court that the "true administration of justice" calls for the court to allow the jury to have testimony read back to resolve disagreement or correct a memory failure. *Howe,* 392 Mich 676, quoting *State v Wolf,* 44 NJ 176, 185; 207 A2d 670 (1965). The staff comment provides that subrule (H) was adopted to incorporate the procedure governing jury requests for review adopted in *People v Howe.* An informed and accurate debate in the jury room is fundamental to our system of justice. A jury should not be denied a reasonable opportunity to review critical testimony. It is of major concern that we have no knowledge of the extent of the jury's confusion. It is possible that jurors who did not remember testimony of key witnesses may have allowed themselves to be persuaded by those who claimed to remember. This is even more probable when they have been advised by the judge that they cannot review the desired testimony. *Smith,* 396 Mich 111. Moreover, the problem was compounded by the judge's refusal to allow the jurors to take notes. Because the truth-seeking function of the jury was so

tainted by the violation of the court rule in this case, I would hold that the error was nonwaivable.

Next, under *Olano*, the defendant must show "plain" error. In defining plain error, the Court explained that the error must be clear under current law. 507 US 734. As explained, the judge's instruction violated the clear current law as stated in MCR 6.414(H), *Howe*, and *Smith*.

*Olano* then provides that the defendant must show that the plain error affected substantial rights. 507 US 734; *People v Carines*, 460 Mich 750, 774; 597 NW2d 130 (1999). The majority in *Carines* explained this rule by stating that a reviewing court should reverse only when the defendant is actually innocent or the error affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* As explained, the refusal to allow the jury to review the testimony of key witnesses was a violation of defendant's right to have the jury base its verdict on a clear understanding of the facts. Defendant was convicted on the basis of Mackin's testimony. Otherwise, there was only evidence that he was in the vicinity of the store. In this close case, the jury had a legitimate interest in hearing again the testimony of the key witnesses. This is the sort of error that compromises the fairness, integrity, and truth-seeking function of a jury trial. Therefore, reversal is warranted.

IV

At this Court, defendant argues that the "failure to quarrel with the trial judge's determination not to allow the rehearing of testimony" should have been

raised at defendant's initial *Ginther* hearing.[4] There-
fore, defendant asserts, he was denied his constitu-
tional right to effective assistance of counsel. Defend-
ant also implies that his appellate attorney was in-
effective in failing to raise this issue and in failing to
effectively cross-examine trial counsel at the *Ginther*
hearing.

The majority provides that the crucial factor distin-
guishing this case from *Howe* and *Smith* is defense
counsel's acquiescence to the court rule violation.
*Ante* at 215. Therefore, had defense counsel remained
silent, thus forfeiting the error, or had he objected,
thus preserving the error, then under controlling case
law he would be granted a new trial. Given the devas-
tating result of defense counsel's acquiescence under
the majority analysis, defendant was denied his Sixth
Amendment right to effective assistance of counsel.
*People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994).
Therefore, at the very least, defendant is entitled to a
*Ginther* hearing on this issue. The majority, however,
is convinced that appellate counsel's failure to raise
the issue, along with defendant himself failing to raise
the issue at the *Ginther* hearing, is determinative in
deciding that trial counsel was not ineffective. The
majority also provides that defendant's and appellate
counsel's "belief" that the waiver did not constitute
ineffective assistance is sufficiently persuasive to
prove that trial counsel was not ineffective. *Ante* at
219, n 14. I cannot join in such deference to these
inferred beliefs. Defendant is not trained in law, and
appellate counsel's negligence does not prove effec-
tive assistance of another attorney. The majority's

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

lack of desire to address this issue is similarly persuasive. Therefore, I would grant defendant relief on this issue.

V

In this case, as in *Howe*, the jury requested testimony of only the key witnesses. The prosecutor's case relied heavily on Mackin's testimony. Had it not been for that testimony, defendant would never have been arrested and charged. We know that defendant was questioned on the basis of the circumstantial evidence, but that the police did not have enough evidence to hold him until Mackin came forward. The jury requested only the testimony of those who could support defendant's theory that Mackin lied. Denial of a reasonable request to review this key testimony violates both our court rule and case law. This violation severely undermined the truth-seeking function of the jury. Under these circumstances, the trial court's violation of MCR 6.414(H), *Howe*, and *Smith*, *supra*, requires reversal. *Olano*, *supra*. Therefore, I would affirm the decision of the Court of Appeals.