*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROBERT ANTHONY CARTER-CARR II,

      Defendant-Appellant.

UNPUBLISHED
December 05, 2025
11:49 AM

No. 371057
Wayne Circuit Court
LC No. 2023-004640-01-FC

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Following a jury trial in Wayne Circuit Court, defendant, Robert Anthony Carter-Carr II, was convicted of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration of a child under 13 by a person 17 years of age or older). Carter-Carr appeals as of right, arguing this Court should reverse his convictions and remand for a new trial because the trial judge coerced a jury verdict, the jury verdict form was flawed, and defense counsel was ineffective for failing to object to the instructions and jury verdict form. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The complainant, twelve-year-old MN, testified that in 2017, Carter-Carr, her mother's then boyfriend, made MN perform fellatio on him on three separate occasions. The sexual abuse occurred in MN's home when her mother was at work. MN was six years old at the time, and Carter-Carr was 26 years old.[1] MN eventually reported the sexual abuse to her mother when she was 12 years old. A few days later, MN's mother reported the sexual abuse to the Detroit Police

---

[1] MN testified she was born February 2, 2011, and she knew Carter-Carr was over 18 years of age when he sexually abused her. MN believed she was seven years old when Carter-Carr abused her. MN's mother testified Carter-Carr was born September 19, 1991.

-1-

Department. MN was interviewed at Kids Talk and after the forensic interview, Carter-Carr was charged with three counts of CSC-I as a second-offense habitual offender, MCL 769.10.

At trial, MN testified about each instance of sexual abuse. MN's mother also testified that Carter-Carr was over 17 years of age in 2017, and that there were times she left MN and MN's sister at home alone with Carter-Carr while she was at work. After the prosecution rested, Carter-Carr did not testify or offer any witnesses.

Following closing arguments, and outside the presence of the jury, the trial court reviewed which jury instructions it intended to read to the jury and, chapter by chapter, allowed each party to request certain instructions. The trial court then asked: "Anything else either side is requesting?" Defense counsel answered: "None, Judge." The prosecution answered: "I don't believe I have any others." The trial court then read jury instructions to the jury. The jurors were instructed on the elements of CSC-I contained in M Crim JI 20.1 and 20.30b, and that in order to find Carter-Carr guilty on all three counts, the jury had to find:

> First, that the Defendant engaged in a sexual act that involved entry into [MN]'s mouth by the Defendant's penis. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.
>
> Second, that [MN] was less than thirteen years old at the time of the alleged act.
>
> Third, that the Defendant was seventeen years of age or older when the offense occurred.

The trial court also read M Crim JI 3.11, and described what to do if jurors disagreed with each other during deliberations:

> It is your duty as jurors to talk to each other and make every reasonable effort to reach [sic] agreement. Express your opinions and the reasons for them but keep an open mind as you listen to your fellow jurors. Rethink your opinions and do not hesitate to change your mind if you decide you are wrong. Try your best to work out your differences.
>
> However, although you should reach agreement, none of you should give up your honest opinion about the case just because other jurors disagree with you or just for the sake of reaching a verdict. In the end, your vote must be your own and you must vote honestly and in good conscience.

Finally, the trial court asked the prosecution and the defense: "Are you satisfied with the reading of the [jury] instructions?" and each answered "yes." The trial court then asked: "Have you each had an opportunity to review the verdict form?" The prosecution and the defense each confirmed they reviewed the verdict form and had no objection to it. The case was submitted to the jury just before their lunch break on the second day of trial. It is unclear from the record how long they deliberated after lunch but the jury returned the following morning with questions.

The trial court read the questions and answers on the record:

One of those notes asks, "Are we able to receive a copy of the victim's transcripts? More than one copy, two to three."

Even if I were to expedite the transcripts, it would take two weeks to get them properly prepared. So I'm going to ask that you rely on your collective memory of the testimony as you continue to deliberate.

The next question is, "What are the steps if we do not reach a unanimous vote by end of business today?"

I'm going to ask that you continue to deliberate and not think about what could happen if something else happens. Your job here as jurors is to sit, to discuss the case among yourselves. I'm going to refer you to, again, jury instruction 3.11 and ask that you continue to speak with each other, deliberate with an open mind, express your opinions and the reasons for them but keep an open mind as you listen to your fellow jurors. Do not hesitate to change your mind if you believe you were wrong, however, don't give up your honest opinion about the case just because other jurors disagree with you. Everyone understand?

So the full instruction is in 3.11. I'm going to ask that you continue to deliberate. I have no reason to believe that another twelve jurors could sit here—I don't want to do something different that could make them have these conversations in a more productive manner. I think you guys are able to do that. I'm going to send you back into the jury room and give you the opportunity to continue your deliberations at this time.

After the trial court answered the jury's questions, it asked the prosecution and the defense "Are you satisfied?" The prosecution and the defense each answered they were satisfied with the instructions. The jury resumed its deliberations.

Less than an hour later, the jury reached a verdict—guilty on all three counts of CSC-I. The jury was polled, and each juror answered "yes" when asked whether this verdict of guilty on all three counts was their verdict.

At sentencing, Carter-Carr alleged that there were some issues during jury deliberations:

I was told that a couple of people talked to the jury and the jury had said that they was [sic] going to say not guilty but then at the last minute, since they didn't want to come back to court they said guilty. I was wondering is that, like, is that okay?

The trial court responded: "Sir, that's all hearsay and I'm not going to respond to that." After allowing Carter-Carr to finish his allocution, the trial court went on to state:

All right. I was—clearly[,] I was here during the pendency of this case. I heard all of the evidence. Frankly, I found the testimony of the complainant credible, as ultimately the jury found her testimony credible when they found Mr. Carter-Carr guilty on three counts of criminal sexual conduct in the first degree. I—and frankly, there is nothing that I heard from the jury myself when I spoke with them that

-3-

they—any of them indicated what Mr. Carter-Carr has just stated, for the record, that they only put guilty because they wanted to leave.

* * *

In fact, the jury came back at 10:29 a.m., the morning of [January] 31st. So clearly[,] they would have had all day. They were already down here in court. They would have had all day to continue to deliberate. You know, I guess, if it was 3:35, the Court could see some potential, but when the jury's verdict came in at 10:30, there was no reason for them to have felt pressured at least or believe that they would have had to have come back for another day when they had a full day of deliberations still ahead of them. So that is not anything that I heard when I spoke with the jury. And that is something that I don't think is consistent with the timing of when the jury verdict was taken either. Ultimately, it just comes down to Mr. Carter-Carr, they believe you did what you did. That is all.

Carter-Carr was sentenced with a second-offence enhancement to three concurrent terms of 25 to 50 years' imprisonment, with credit for 255 days served. This appeal followed.

## II. JURY INSTRUCTIONS AND JURY VERDICT FORM

On appeal, Carter-Carr first argues the trial court coerced a jury verdict by failing to fulfill the jury's request for a transcript of MN's testimony. Next, Carter-Carr argues the jury verdict form was improper and he is entitled to a new trial. We disagree in both respects.

## A. CARTER-CARR WAIVED ANY CHALLENGE TO THE JURY INSTRUCTIONS AS GIVEN

The applicable court rule for when a jury requests review of testimony during deliberations is MCR 2.513(P), which states:

> If, after beginning deliberation, the jury requests a review of certain testimony . . . the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may make a video or audio recording of witness testimony, or prepare an immediate transcript of such testimony, and such tape or transcript, or other testimony or evidence, may be made available to the jury for its consideration. The court may order the jury to deliberate further without the requested review, as long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

When the jury requested a review of MN's testimony, the trial court stated: "Even if I were to expedite the transcripts, it would take two weeks to get them properly prepared. So I'm going to ask that you rely on your collective memory of the testimony as you continue to deliberate." The

instruction ended there, and the trial court moved onto the jury's next question and responded as described.[2]

Carter-Carr argues his challenge to the court's response to juror questions is an unpreserved constitutional issue and should be reviewed for plain error affecting his substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). But in this case, defense counsel did not fail to object to challenged jury instructions as given. Rather, defense counsel here expressly approved the trial court's instructions in response to the jury's questions on day three of trial by answering "yes" when asked if satisfied with both instructions. "This constitutes a waiver[3] that extinguishes any error. Thus, this case does not concern unpreserved error where no timely objection was made." *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). Because Carter-Carr waived, as opposed to forfeited, his rights, there is no error to review. *Id*. at 219. These alleged errors can only be considered in the context of an ineffective assistance of counsel claim, which we do later in this opinion.

## B. ANY ERROR WITH THE JURY VERDICT FORM IS ALSO WAIVED

"A party must object or request a given jury instruction to preserve the error for review." *People v Sabin*, 242 Mich App 656, 657; 620 NW2d 19 (2000). As with the first issue, defense counsel expressly approved the jury instructions and verdict form as given:

> *Trial Court*. Are you satisfied with the reading of the instructions? Start with the People.
>
> *Prosecution*. Yes Judge.
>
> *Defense Counsel*. Yes, your Honor.
>
> *Trial Court*. Have you each had an opportunity to review the verdict form?
>
> *Defense Counsel*. Yes, Judge.
>
> *Prosecution*. Yes.
>
> *Trial Court*. Any objection?
>
> *Prosecution*. No objection, Judge.

---

[2] Carter-Carr does not, in his statement of questions presented, directly challenge the trial court's response to the jury's second question. However, he argues that the trial court's "refusal to consider what may happen if [the jurors] were still undecided at the end of the day," was "compounded" by the trial court's response to the jury's first question.

[3] A waiver is an "intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 763 n 7.

*Defense Counsel.* None.

This express approval also constituted waiver, extinguishing any error in the instructions and verdict form as given. *Carter*, 462 Mich at 216, 219. We only consider the alleged error with the jury verdict form in the context of an ineffective assistance of counsel claim.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Carter-Carr argues in the alternative that defense counsel was ineffective for failing to object to the trial court's instructions to the jury in response to its questions posed and to the jury verdict form. "Because no *Ginther*[4] hearing was held, review is limited to errors apparent on the record." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007) (citation omitted). "The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Schrauben*, 314 Mich App 181, 189; 886 NW2d 173 (2016), quoting *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008).

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* Trial counsel is presumed competent, and "[a] defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). "This Court will not . . . second-guess matters of trial strategy." *People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022).

### A. CARTER-CARR'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO JURY INSTRUCTIONS

Defense counsel's failure to object to the trial court's response to the jury's request to review MN's testimony arguably was objectively unreasonable. In *Carter*, 462 Mich at 213, 219-220, the prosecution conceded that the trial court violated the predecessor to MCR 2.513[5] when,

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] MCR 6.414 was the previous version of this court rule and governed the conduct of jury trials in criminal cases. It stated:

> If, after beginning deliberation, the jury requests a review of certain testimony or evidence, the court must exercise its discretion to ensure fairness and to refuse unreasonable requests, but it may not refuse a reasonable request. The court may order the jury to deliberate further without the requested review, so long as the possibility of having the testimony or evidence reviewed at a later time is not foreclosed.

following a request for transcripts, it stated to the jury only that "the transcripts will not be typed for some weeks and months way into the future" and "you must rely on your collective memories to resolve any issues with regard to that . . ." without offering that the transcripts could possibly be reviewed at a later time.[6]

We do not have the benefit of reviewing a *Ginther* hearing transcript to understand defense counsel's strategy for failing to object, or whether he considered objecting to this instruction. We also do not know what clarification the jury sought from reviewing MN's testimony—it is possible defense counsel's strategy was to keep MN's testimony from closer scrutiny by the jury so they would forget details of her testimony, doubt her convictions, and return a verdict of not guilty. But even if we assume, *arguendo*, that the trial court's instruction violated MCR 2.513(P), and that it was objectively unreasonable for trial defense counsel to refrain from objecting, Carter-Carr has not shown a reasonable likelihood of a different outcome.

Carter-Carr argues that the "logical inference" from the jury's questions is that it was "deadlocked." This is speculation. Indeed, Carter-Carr concedes that "this was clearly not a 'properly' hung jury," and also concedes that the trial court did not give a supplemental instruction that could be construed as coercing a jury verdict. The jurors heard directly from MN, and her testimony was harmful to Carter-Carr and consistent with her mother's testimony. Thus, when the jury resolved its differences within an hour of asking for the transcript, this could signal that they were not struggling as much as Carter-Carr contends they were without the ability to review the transcript of MN's testimony.

As for the second instruction that followed the jury's request to review MN's testimony, we find no meaningful departure from the typical *Allen*[7] instruction. "When a jury indicates it cannot reach a unanimous verdict, a trial court may give a supplemental instruction—commonly known as an *Allen* charge—to encourage the jury to continue deliberating. The goal of such an instruction is to encourage further deliberation without coercing a verdict." *People v Walker*, 504 Mich 267, 276-277; 934 NW2d 727 (2019) (citations omitted). "If the charge has the effect of

---

It has been replaced by MCR 2.513, which combines the general rules for both civil and criminal jury trials.

[6] *People v Joseph*, 114 Mich App 70, 74-75; 318 NW2d 609 (1982) (finding no error when the trial court twice instructed the jury to continue deliberations but also informed the jury they could request the rereading of the testimony again if necessary); *People v Robbins*, 132 Mich App 616, 620-621; 347 NW2d 765 (1984) (finding no error when the trial court instructed the jury to continue attempting to discuss and resolve any problems without the requested testimony, but also informed the jury they could make another request to rehear the testimony if they still had problems after further deliberations).

[7] See, *Allen v United States*, 164 US 492, 501; 17 S Ct 154; 41 L Ed 528 (1896) ("While undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views . . . .").

forcing a juror to surrender an honest conviction, it is coercive and constitutes reversible error." *People v Sullivan*, 392 Mich 324, 334; 220 NW2d 441 (1974).

Here, the jury was not "deadlocked" as we traditionally understand it, as Carter-Carr concedes. And, Carter-Carr's jury received the all-important "honest conviction" reminder along with other instructions that largely mirror the model jury instructions. *People v Engle*, 118 Mich 287, 291-292; 76 NW 502 (1898) (wherein this Court ordered a new trial because after the jury indicated it was unable to reach a verdict, the trial court's deadlocked-jury instruction failed to give an honest-conviction reminder); *People v Hardin*, 412 Mich 296, 314; 365 NW2d 101 (1984) (holding that supplemental instructions were not unduly coercive where an honest-conviction reminder was given after the challenged instructions).

The trial court here did not venture into ad-lib instructions that expressed frustration with the jury, that insulted the jury, or that encouraged jurors to report each other for dissenting from the majority view. See *Walker*, 504 Mich at 278-279.[8] On this record, we cannot conclude the trial court coerced a jury verdict and thus cannot find counsel's representation unreasonable in failing to object to the jury instructions. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## B. CARTER-CARR'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO THE VERDICT FORM

Carter-Carr also raises issues with the jury verdict form as potential ineffective assistance of counsel. He concedes the jury was properly instructed as to each element of CSC-I, but contends the verdict form did not allow for a general finding that he was guilty of CSC but not guilty of an additional special finding that MN was less than 13 years old and Carter-Carr was 17 years of age or older when the offense occurred, and defense counsel was ineffective for waiving and extinguishing any potential error with the jury verdict form. We disagree.

"The verdict form is treated as, essentially, part of the package of jury instructions." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012), citing *People v Wade*, 283 Mich App 462, 464-468; 771 NW2d 447 (2009). "The pertinent model jury instructions must be given in each action in which jury instructions are given if the model instructions are applicable, accurately state the applicable law, and are requested by a party." *People v Montague*, 338 Mich App 29, 38; 979 NW2d 406 (2021) (quotation marks and citations omitted). M Crim JI 20.30b directs the jury to make special findings regarding the respective ages of a defendant and complainant after reaching a guilty verdict of CSC-I. And the model verdict form for single counts of CSC-I, contained in M Crim JI 3.32, conforms to M Crim JI 20.30b by directing that a jury only proceed to special findings regarding the respective ages of the defendant and complainant after reaching a guilty verdict of CSC-I. According to Carter-Carr, because the jury verdict form did not conform

---

[8] The extent of the trial court's ad-lib instructions after reading M Crim JI 3.11 were: "I have no reason to believe that another twelve jurors could sit here—I don't want to do something different that could make them have these conversations in a more productive manner."

to the model form in M Crim JI 3.32, it did not allow the jury an opportunity to return a not-guilty verdict as to the ages of Carter-Carr and MN.

But Carter-Carr's counsel did not request that the trial court use the model jury instructions or verdict form, so the trial court was not required to conform its instructions or the verdict form to M Crim JI 3.32. *Montague*, 338 Mich App at 38. Thus, whether defense counsel's approval of the trial court's jury instructions was objectively unreasonable turns on whether the court's instructions "fairly presented the issues to be tried and sufficiently protected the defendant's substantial rights." *Id*. Due process requires that the trial court "properly instruct the jury so that it may correctly and intelligently decide the case." *People v Clark*, 453 Mich 572, 583; 556 NW2d 820 (1996). "[A] criminal defendant is deprived of his constitutional right to a jury when the jury is not given the opportunity to return a general verdict of not guilty." *Wade*, 283 Mich App at 467, citing *Clark*, 453 Mich at 707. Under MCL 750.520b(1)(a), a person is guilty of CSC-I if he or she engages in sexual penetration with another person and "[t]hat other person is under 13 years of age." MCL 750.520b(2)(b) further provides that a violation that is committed "by an individual 17 years of age or older against an individual less than 13 years of age" is punishable "by imprisonment for life or any term of years, but not less than 25 years."

Here, the trial court orally, and in writing, instructed the jury regarding the elements of CSC-I contained in M Crim JI 20.1 and 20.30b, and that in order to find Carter-Carr guilty on all three counts, the jury had to find beyond a reasonable doubt:

> First, that the Defendant engaged in a sexual act that involved entry into [MN]'s mouth by the Defendant's penis. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.
>
> Second, that [MN] was less than thirteen years old at the time of the alleged act.
>
> Third, that the Defendant was seventeen years of age or older when the offense occurred.

The verdict form provided the jury with the following options:

> **CT 1** – CRIMINAL SEXUAL CONDUCT – FIRST DEGREE (PERSON UNDER 13, DEFENDANT 17 YEARS OF AGE OR OLDER)
>
> ___ NOT GUILTY
>
> OR
>
> ___ GUILTY
>
> **CT 2** – CRIMINAL SEXUAL CONDUCT – FIRST DEGREE (PERSON UNDER 13, DEFENDANT 17 YEARS OF AGE OR OLDER)
>
> ___ NOT GUILTY

OR

___ GUILTY

**CT 3** – CRIMINAL SEXUAL CONDUCT – FIRST DEGREE (PERSON UNDER 13, DEFENDANT 17 YEARS OF AGE OR OLDER)

___ NOT GUILTY

OR

___ GUILTY

Read together, the trial court's CSC-I instruction and corresponding CSC-I options on Carter-Carr's verdict form fairly presented the issues to be tried and sufficiently protected Carter-Carr's rights. See *Montague*, 338 Mich App at 38. The absence of a special findings section regarding Carter-Carr's and MN's respective ages on the verdict form did not improperly foreclose a general finding of CSC-I, because the trial court clearly instructed the jury that in order to return a guilty verdict for CSC-I, it had to find that MN was younger than 13 years old and defendant was 17 years of age or older. And, the verdict form reflected the requirement that in order to convict Carter-Carr of CSC-I, the jury had to find Carter-Carr was 17 or older and MN under 13 at the time of the offense.

Further, the jury heard MN testify she was born February 2, 2011, making her six years old in 2017, and that she knew Carter-Carr was over 18 years of age when he sexually abused her. The jury also heard MN's mother testify Carter-Carr was born September 19, 1991, making him 26 years old when he abused MN. There was no dispute at trial that Carter-Carr was over the age of 17 at the relevant time, and this testimony was sufficient for the jury to find Carter-Carr guilty beyond a reasonable doubt as to MCL 750.520b(2)(b) and his and MN's respective ages. He has not explained why it would be necessary in this case for the verdict form to account for a scenario in which the jury could make a general finding of guilt as to CSC-I while also finding that Carter-Carr's age had not been proven beyond a reasonable doubt. Thus, Carter-Carr has not shown that if defense counsel asked for the verdict form to conform to M Crim JI 3.32, the result of the proceedings would have been different.

### IV. CONCLUSION

Carter-Carr waived any issues with his jury instructions and verdict form and has failed to demonstrate his counsel was ineffective. As a result, we affirm Carter-Carr's convictions and sentences.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young