# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
March 14, 2017

*In re* KECK, Minors.

Nos. 333710;333721
Macomb Circuit Court
Family Division
LC No.   2016-000072-NA
          2016-000090-NA

Before:  HOEKSTRA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father, A. Keck, and respondent-mother, J. Karaffa, appeal as of right the trial court's order terminating their parental rights to the minor children, KK and CK, pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), and (k)(*v*). Because the trial court did not clearly err by terminating respondents' parental rights and respondent-mother has not shown plain error in the admission of other acts evidence, we affirm.

In 2016, respondents were living together with their two young children, KK and CK. Also living in the home was GK, respondent-mother's 11-year-old child from a previous relationship. When CK was three months of age, Children's Protective Services (CPS) received a complaint that the infant had been brought to the hospital with injuries indicative of physical abuse. These injuries included recent injuries—such as bilateral skull fractures, subdural hematoma, and retinal hemorrhages in both eyes—as well as an older broken rib, which showed signs of healing. Neither respondent was able to provide a feasible explanation for these severe injuries.

Petitioner sought termination of respondents' parental rights to all three children at the initial dispositional hearing. At the hearing, petitioner introduced other acts evidence relating to respondent-father, indicating that, in 1994, he pled guilty to second-degree murder in the death of his 3-month old daughter after he confessed to hitting her. Following the hearing, the trial court assumed jurisdiction over the three children. The court found that statutory grounds for termination of respondents' parental rights had been established by clear and convincing evidence under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), and (k)(*v*). The court also concluded that a preponderance of the evidence supported a finding that termination of respondents' parental rights was in KK's and CK's best interests. However, noting that GK was safely in the custody of her father, in view of her bond with her mother, the court found that termination of respondent-mother's parental rights to GK was not in GK's best interests. The

-1-

court entered an order terminating respondents' parental rights to CK and KK. Respondents appeal as of right.

On appeal, respondents first argue that the trial court erred when it found that the statutory grounds for termination were established by clear and convincing evidence. In particular, respondents contend that there were possible accidental causes for CK's injuries, including the possibility that 18-month-old KK injured the baby by climbing into her bassinet and sitting on her or the possibility that GK injured the baby by playing with her or accidentally sitting on her. In view of these other possibilities and expert testimony to suggest that CK's injuries could have been accidental, respondents contend that the trial court could not conclude by clear and convincing evidence that CK's injuries were the result of nonaccidental child abuse.

To terminate parental rights, the trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *In re Miller,* 433 Mich 331, 337; 445 NW2d 161 (1989). "Due regard is given to the trial court's special opportunity to judge the credibility of witnesses." *In re LE*, 278 Mich App 1, 18; 747 NW2d 883 (2008).

Respondents' parental rights were terminated pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), and (k)(*v*). These statutory provisions permit termination of parental rights when the following conditions are satisfied:

> (b)  The child or sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

> (*i*)  The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that the is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

> * * *

> (g)  The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

> * * *

> (j)  There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

* * *

(*iii*) Battering, torture, or other severe physical abuse.

* * *

(*v*) Life-threatening injury.

Notably, when dealing with child abuse where the identity of the abuser cannot be definitively established, "termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j) and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries." *In re Ellis,* 294 Mich App 30, 35-36; 817 NW2d 111 (2011). See, e.g., *In re VanDalen*, 293 Mich App 120, 140; 809 NW2d 412 (2011).

In this case, after reviewing the record, we conclude that the trial court did not clearly err when it found that statutory grounds for termination were established by clear and convincing evidence. The evidence overwhelmingly established that CK had sustained severe and life-threatening physical injuries. A skeletal survey, x-rays, a CT scan, and an MRI revealed that the infant had sustained bilateral skull fractures, one—if not more—rib fractures, and a fractured femur. CK also experienced retinal hemorrhages in both eyes as well as a subdural hematoma, and surgery was necessary to insert shunts to relieve intracranial pressure. The evidence indicates that, because of the intracranial pressure, CK's injuries were life-threatening.

Further, the evidence showed that these injuries were the result of nonaccidental trauma. That is, there was strong evidence that CK's injuries were intentionally caused by both blunt force trauma, i.e. severe impact, and by being forcefully shaken back and forth or side-to-side. The testimony of CK's treating physicians refuted any suggestion that CK's injuries could have been self-inflicted or accidental. The treating physicians opined that the types of injuries present could not have been caused by GK or KK, in the manner suggested by respondents, because CK's siblings simply could not have exerted the force necessary to cause the injuries sustained. Indeed, CK's injuries were likened to the type of injury a child would have sustained had she been ejected from a motor vehicle during an accident. To the extent respondents contend that their expert disagreed with the opinions of CK's treating physicians, we note that respondent's expert could not exclude the possibility of child abuse and that, in any event, resolution of any disagreement among the experts posed a question of fact for the trial court. *Robins v Garg*, 276 Mich App 351, 363; 741 NW2d 496 (2007). Given the evidence presented, the trial court did not clearly err by finding that CK suffered nonaccidental trauma.

Recognizing that the injuries were not accidentally caused by CK's siblings, in the absence of any other explanation, it also follows from the evidence that CK was physically abused by both of her parents, or that one parent abused CK and the other parent failed to protect the child. Respondents were CK's primary caregivers. Indeed, since her birth, CK had rarely been out of respondents' care, and there is no indication that another adult caused CK's injuries. Instead, it is clear that CK suffered her severe injuries while in respondents' care. Moreover, the

infant showed signs of an older injury to her ribs, and both parents noticed signs of the infant's swelling head and yet they failed to take prompt action for the infant's protection. Cf. *In re VanDalen*, 293 Mich App at 140. Given this evidence, the trial court did not clearly err by determining that both respondents committed the abuse in question or, at a minimum, one parent failed to protect the child from abuse inflicted by the other parent. In these circumstances, it was not necessary for the evidence to conclusively establish which parent perpetrated the physical abuse. See *In re Ellis,* 294 Mich App at 35-36.

The evidence also supports the trial court's finding that both CK and KK would be at risk of harm if returned to respondents' care. "Evidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011). Here, it is undisputed that CK sustained severe injuries. Respondents could articulate no plausible explanation for these injuries. Indeed, respondents minimized the nature of CK's injuries, refused to acknowledge the manner in which they were sustained, and persisted in blaming two young siblings. Respondents also failed to promptly seek treatment for CK when she exhibited signs of injury. Respondent-mother, although acknowledging that respondent-father had been convicted of second-degree murder in the death of his infant daughter, failed to recognize the risk posed by respondent-father. Indeed, respondents were still in a relationship and still living together. Because the evidence supported a finding that one or both of respondents caused the injuries and that both respondents continued to deny knowledge of the source of the injuries, there existed a reasonable likelihood that the children would suffer further harm in respondents' care. Based on the foregoing, there was clear and convincing evidence to terminate respondents' parental rights to the two children pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), and (k)(*v*).

Next, respondents challenge the trial court's finding that termination of their parental rights was in the children's best interests. In particular, respondents contend that they are strongly bonded to their children. They also argue that, in lieu of termination, the trial court should have created a guardianship with the children's maternal grandparents and afforded respondents an opportunity to participate in services. We find no merit to these arguments.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination is in a child's best interests is determined by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In evaluating a child's best interests, the trial court should weigh all the available evidence and may consider a wide variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation omitted). The trial court may also consider a history of child abuse as well as the children's safety and well-being in the home. *In re VanDalen*, 293 Mich App at 142. We review the trial court's best interests determination for clear error. *In re White*, 303 Mich App at 713.

The trial court did not clearly err in finding that termination of respondents' parental rights was in KK's and CK's best interests. One or both of the respondents physically abused

CK; the other parent failed to protect her. Respondents then compounded matters when they failed to promptly obtain medical treatment. The evidence further established that respondents continue to deny the manner in which CK was injured, and instead seek to place blame on CK's siblings. This evidence clearly showed that the children would be at risk if returned to respondents' care. Cf. *In re VanDalen*, 293 Mich App at 142. While it is undisputed that a significant bond existed between respondents and their children, this bond does not outweigh the children's need for safety. Moreover, given the aggravated abuse in this case, respondents were not entitled to further services aimed at reunification. See *In re Moss*, 301 Mich App at 91-92; MCL 722.638(2).

In terms of a possible guardianship, it is true that the maternal grandparents expressed a willingness to enter into a guardianship. Although placement with a relative weighs against termination, and the fact that a child is living with relatives must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012). In this case, the trial court considered the children's placement with a relative, but rejected the possibility of a guardianship, and instead concluded that termination of respondents' parental right was in the children's best interests. The trial court emphasized the children's need for safety and reasoned that termination would best ensure the children's safety by permanently eliminating respondents' ability to make decisions for the children. Moreover, there was testimony from the foster care worker that termination, which would pave the way for adoption, was a preferable permanency path for the two children given their very young ages and their need for long term protection and care. Under these circumstances, the trial court did not clearly err when it rejected guardianship and found that termination of respondents' parental rights was in the children's best interests.

Finally, respondent-mother contends that the trial court abused its discretion when it admitted evidence related to respondent-father's 1994 second-degree murder conviction arising from the death of respondent-father's infant child. Specifically, respondent-mother argues on appeal that testimony relating to the child's autopsy was "graphic" and "emotional," and that this other acts evidence was thus substantially more prejudicial than probative. However, in the lower court, respondent-mother's attorney expressly waived any argument relating to the other acts evidence, stating with respect to the admission of this evidence: "I would just waive argument and leave it to the Court's discretion . . . ." Respondent-mother cannot affirmatively waive the issue in the trial court and then seek to raise it as an error on appeal. See *People v Carter*, 462 Mich 206, 214-216; 612 NW2d 144 (2000). Waiver extinguishes any error, and there is no error for this Court to review. *Id.*

In any event, even if we did consider the issue, it is at best unpreserved and reviewed for plain error affecting respondent-mother's substantial rights. *In re VanDalen*, 293 Mich App at 135. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (citation omitted). In this case, it is clear that respondent-mother has not satisfied these requirements.

In particular, under MRE 404(b)(1), the trial court allowed petitioner to introduce evidence that, in 1994, respondent-father pleaded no contest to a charge of second-degree murder

in the death of his then three-month-old daughter. At the termination hearing, a police officer testified to events related to his 1993 investigation of the child's death, including details of respondent-father's confession and descriptions of the child's injuries that the officer observed during the infant's autopsy. This evidence was relevant for a proper purpose, namely to establish that CK's injuries were not the result of an accident and, with regard to respondent-mother in particular, to demonstrate respondent-mother's failure to protect CK insofar as she knew of respondent-father's prior conduct and yet she failed to protect her children or to take prompt action when she noticed CK's swollen head. See MRE 404(b); *People v VanderVliet*, 444 Mich 52, 62-64; 508 NW2d 114 (1993), modified 445 Mich 1205 (1994).

Contrary to respondent-mother's appellate arguments, the probative value of this other-acts evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight. *In re MU*, 264 Mich App 270, 285; 690 NW2d 495 (2004). We see no such danger in this case. The evidence had considerable probative value, and we are persuaded that the trial court was able to use the other acts evidence for the proper purpose for which it was offered. See *People v Bailey*, 175 Mich App 743, 746; 438 NW2d 344 (1989) (finding that, in a case tried without a jury, "it is unlikely that the trier of fact considered the evidence for anything other than the purpose for which it was offered"). Indeed, in reviewing the trial court's opinion, it is clear that the trial court's findings in this case were based on the strong medical testimony that established that CK was the victim of nonaccidental severe physical abuse while in respondents' care. There is no support for respondent-mother's claim that the police officer's testimony was unfairly prejudicial or that such evidence affected the outcome of the proceedings. Accordingly, respondent-mother has failed to establish plain error that affected her substantial rights.

Affirmed.


/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Henry William Saad