# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
February 27, 2018

v

ANTHONY CASANOVA,

No. 324819
Muskegon Circuit Court
LC No. 13-063270-FC

        Defendant-Appellant.

Before: MURPHY, P.J., and O'CONNELL and K. F. KELLY, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree felony murder, MCL 750.316(1)(b), with first-degree child abuse, MCL 750.136b(2), constituting the underlying felony. He was sentenced to life imprisonment without the possibility of parole. Defendant now appeals as of right. We affirm.

Defendant's conviction arises out of the sudden death of his infant son, TC, on January 4, 2013. The evidence established that TC was born perfectly healthy on October 26, 2012. On the day in question, TC's mother left TC in defendant's care while she went to work. Hours later, emergency personnel were called to defendant's house for an "unresponsive child." First responders arrived to find TC unconscious, not breathing, and without a pulse. He had multiple bruises, which appeared to be in varying degrees of healing, on his chest and abdomen. The responders were unable to revive TC.

An autopsy ultimately revealed that TC died of "multiple injuries." The following injuries were noted by the medical examiner (ME): approximately 25 bruises on TC's chest and abdomen, circular in design, that were of "multiple varying colors;" a large hematoma on the right side of TC's head; a lacerated liver; a lacerated spleen; a total of 15 rib fractures, some of which had "callous formations" suggesting that they were older and healing; a contusion on the heart; a skull fracture several inches in length; and "a large amount of blood that had accumulated beneath the skull, not just associated with the fracture but from tearing of veins that connect the lining underneath the bone to the brain itself." The ME concluded that TC's injuries were the result of significantly forceful and violent actions. She opined unequivocally that TC's injuries were not accidental but rather intentionally inflicted.

Defendant initially told various first responders, medical personnel, and a detective that TC sustained his injuries after defendant tripped over the family dog while carrying TC, causing defendant to drop the baby before ultimately falling on top of him.[1]  However, during a subsequent police interview and prior to being given his *Miranda*[2] rights, defendant admitted "bouncing" TC off an air mattress seven or eight times in what was "a little more than a play bounce."  Later, and still prior to being Mirandized, defendant added that he might have squeezed TC "a little too hard" to stop his crying, with defendant also stating that he had bounced TC off the bed because of the crying.  Defendant was then read his *Miranda* rights.  Afterward, defendant informed police that, in response to TC's crying, he had squeezed TC twice in kind of a "bear hug," causing TC to lose his breath for a few seconds, and that when TC started crying again, defendant bounced him off the bed.

The trial court suppressed the un-Mirandized statements made by defendant, but allowed the admission of the statements made by defendant after he was given his *Miranda* rights.[3]  On appeal, defendant argues that the post-*Miranda* statements should have been suppressed as the poisonous fruit of the illegally obtained un-Mirandized statements.  We hold that, assuming error by the trial court, defendant has failed to establish the requisite prejudice.  MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

In *People v Whitehead*, 238 Mich App 1, 7; 604 NW2d 737 (1999), this Court observed that "[t]he United States Supreme Court has determined that the erroneous admission of a confession into evidence is a nonstructural defect that does not justify automatic reversal but, instead, requires a harmless-error analysis."  Harmless-error analysis applies to statements obtained in violation of *Miranda* that were admitted into evidence.  *United States v Perdue*, 8 F3d 1455, 1469 (CA 10, 1993); *United States v Johnson*, 816 F2d 918, 923 (CA 3, 1987); *Bryant*

---

[1] We note that TC's mother testified that just one day before the child died, defendant gave the exact same explanation to her with respect to the cause of a bruise on TC.

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] At trial, defendant's entire videotaped police interview was played for the jury after defendant decided, for strategic purposes, to agree to the admission of the full interview in light of the trial court's ruling.  Counsel made clear that defendant was not abandoning his position that the post-*Miranda* statements should have been excluded.  Given these circumstances, we reject the prosecutor's contention that defendant waived the appellate issue concerning *Miranda*.  We note that the ME refuted defendant's description of events and his claim of accident.

*v Vose*, 785 F2d 364, 367 (CA 1, 1986); *United States v Ramirez*, 710 F2d 535, 542 (CA 9, 1983). The error must be harmless beyond a reasonable doubt. *Whitehead*, 238 Mich App at 7; *Perdue*, 8 F3d at 1469. In *Whitehead*, 238 Mich App at 9-10, this Court explained:

> [T]he question before us is whether, absent the confession, honest, fair-minded jurors might very well have brought in not-guilty verdicts. The properly admitted evidence must be "quantitatively assessed" to determine whether, had the improperly admitted evidence not been presented at trial, there is any "reasonable possibility" that a factfinder would have acquitted. . . . A reviewing court must conduct a thorough examination of the record. If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same *absent the error*, it should not find the error harmless. . . . When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the *remainder of the evidence* against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt. If the proof against defendant was so overwhelming that all reasonable jurors would have found guilt even without the confession being brought into evidence, the conviction must stand. [Citations, quotation marks, alteration brackets, and ellipses omitted.]

Here, any error in failing to suppress the post-*Miranda* statements was harmless beyond a reasonable doubt because reasonable jurors would still have found defendant guilty on the basis of the untainted evidence, which overwhelmingly established defendant's guilt. First, as mentioned above, the evidence revealed that this was not the first time defendant claimed to have injured TC by tripping over the family dog, as TC's mother testified that just one day before the fatal incident, defendant used the very same scenario to explain a bruise on TC's chin. By the mother's own admission, it was odd that defendant employed the same excuse to also explain TC's fatal injuries a day later. This evidence substantially, if not completely, undermined any claim of accident. Moreover, the ME testified and stated unequivocally that TC's injuries were caused intentionally, not accidentally. Her opinion rested on several factors. First, the multiple bruises on TC's chest area did not fit "whatsoever" defendant's claimed act of tripping and falling; the bruises looked like finger marks. Given TC's age and the fact that he was not yet mobile, there was no logical reason for such bruises to exist on his body, leading the ME to opine that they were "non-accidental in nature." Second, TC's rib fractures, some of which were healing and all of which were caused by "significant" force, did not fit the pattern of a one-time, crushing-type injury but were instead indicative of intentional abuse. Finally, in the ME's opinion, defendant's version of events would not have accounted for the tearing of the veins under TC's skull, which required "motion and impact," not just blunt force trauma to the head. These observations led the ME to conclude that there was "really nothing else to explain" the child's fatal injuries, other than that they were intentionally inflicted. The ME expressed that she was "very confident" in her conclusion that the manner of TC's death was homicide.

In light of the above untainted evidence, it is clear to us, beyond a reasonable doubt, that a rational jury would have found defendant guilty even absent the admission of the challenged portion of his confession.

Defendant next argues that the trial court erred in allowing testimony about defendant's act of viewing various pornographic websites on his cellular telephone in the approximately one-hour window before calling 9-1-1 to report TC's injuries. As a threshold matter, however, we conclude that defendant has waived this issue. Waiver is defined as "the intentional relinquishment or abandonment of a known right" and occurs when a defendant acquiesces to a course of action. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotations marks and citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks omitted). This rule exists to preclude defense counsel from harboring error as an appellate parachute. *Id*. at 214.

It is apparent from the record that in testifying about the various pornographic websites that defendant visited, the witness at issue was reading directly from an "extraction report" containing the information taken from defendant's cellular telephone. Before that witness testified, that "extraction report" was admitted into evidence with defense counsel's affirmative acquiescence. In other words, the challenged evidence regarding pornographic websites viewed by defendant on his cellular telephone during the timeframe in question was admitted with defense counsel's express approval long before the witness ever testified to that information. By affirmatively acquiescing to the earlier admission of the report, defense counsel waived any right to later object to the testimony, and any claimed error in allowing that testimony was "extinguished." *Id*. at 214-215. There is thus "no error to review." *People v Kowalski*, 489 Mich 488, 504; 803 NW2d 200 (2011). Accordingly, defendant is not entitled to reversal on this basis.

Finally, defendant contends that the trial court erred in refusing to grant his motion for a new trial on the basis of ineffective assistance of counsel, where counsel failed to procure an expert for trial to counter and rebut the conclusions and opinions of the ME. We disagree.

Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id*. at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.* Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). And we will not "assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). We cannot insulate, however, the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (finding defense counsel performed deficiently by failing to investigate and attempt to secure an expert witness who could both testify in support of the defendant's theory and prepare counsel to counter the prosecution's theory of the case).

At the *Ginther*[4] hearing, defendant produced the testimony of experts, who did not give an opinion as to the cause of TC's death, but did call into question aspects of the ME's conclusions, methods, findings, processes, and timing of injuries, indicating that an accident could not be ruled out as the cause of death.

This is not a case wherein defense counsel did not contemplate and look into obtaining an expert; he did so. Indeed, the trial court's decision to deny defendant's motion for new trial based on ineffective assistance of counsel was primarily predicated on the fact that defense counsel consulted with an expert but chose not to call him as a witness. We agree with the trial court's determination that an attorney is not ineffective for failing "to continue searching for an expert until he finds one with opinions favorable to his theory." We adopt the trial court's written opinion and order denying defendant's motion for new trial as our own relative to that portion of the opinion regarding whether defense counsel's performance was deficient.[5]

Affirmed.

/s/ William B. Murphy
/s/ Peter D. O'Connell
/s/ Kirsten Frank Kelly

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] We decline to address the prejudice prong of ineffective assistance of counsel.