*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT DESHAWN AMERSON,

Defendant-Appellant.

UNPUBLISHED
August 6, 2020

No. 345215
Calhoun Circuit Court
LC No. 2018-000228-FC

Before: TUKEL, P.J., and MARKEY and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction for being a felon in possession of a firearm (felon-in-possession), MCL 750.224f.[1] The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to 57 to 120 months in prison. On appeal, defendant makes a number of arguments about the calculation of the sentencing guidelines; more specifically, he challenges the trial court's assessment for Offense Variables (OV) 1, 3, 4, and 9. This appeal is being decided without oral argument, pursuant to MCR 7.214(E)(1). For the reasons stated, we reverse and remand for resentencing.

## I. UNDERLYING FACTS

In October 2017, defendant borrowed money from a friend to buy marijuana from Kyle Brown. Defendant did not know Brown, so defendant's friend told defendant to tell Brown that "Logan" referred him to Brown. Defendant then went to Brown's apartment and asked if Brown

---

[1] Defendant also was charged with first-degree murder, MCL 750.316; armed robbery, MCL 750.529; and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury additionally was given instructions for two lesser included offenses to first-degree murder: second-degree murder, MCL 750.317; and voluntary manslaughter, MCL 750.321. The jury found defendant not guilty of all of the charges except for felon-in-possession.

-1-

had any marijuana. Brown allowed defendant to enter his apartment. Justin Haan, Brown's roommate, and Dakota Waite, a longtime mutual friend, were both present in Brown's apartment when defendant arrived.

After entering Brown's apartment, defendant and Brown walked to the kitchen and out of sight of Haan and Waite. At this point, the testimony of defendant diverges from and conflicts with the testimony of Haan and Waite.

According to Haan and Waite, defendant and Brown talked briefly in the kitchen before defendant asked if he could see Brown's gun.[2] Brown consented, and then Haan and Waite heard a cocking noise and saw Brown back out of the kitchen with defendant pointing the gun at Brown. While pointing the gun at Brown, defendant told Brown to "get the f-- back," and said, "What you going to do now?" Brown then lunged at defendant and defendant shot him. After Brown was shot, defendant ran out the door with the gun and Haan called 911.

According to defendant, however, after he and Brown entered the kitchen, Brown asked defendant who had sent him. Defendant said that Logan had sent him, but when he failed to accurately describe Logan, Brown pulled his gun out of his pocket and accused defendant of trying to rob him. Brown then pulled a clip out of his other pocket, loaded the gun, and pointed it at defendant. Defendant backed out of the kitchen and stumbled as he backed up. As defendant stumbled, and in order to defend himself, he attempted to place Brown in a headlock with one hand while he tried to grab the gun with his other hand. The gun fired during the struggle and defendant fled the scene with the gun.

Brown died as a result of his injuries and defendant threw the gun away in an unknown area. Defendant turned himself in to police five days later.

## II. STANDARD OF REVIEW

A sentencing court "must consult and consider the applicable sentencing-guidelines range, but the range is advisory only." *People v Savage*, 327 Mich App 604, 617; 935 NW2d 69 (2019). "Trial courts are afforded broad discretion in calculating sentencing guidelines, and appellate review of those calculations is very limited. Scoring decisions for which there is any evidence in support will be upheld." *People v Elliott*, 215 Mich App 259, 260; 544 NW2d 748 (1996) (citation omitted). When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438. "The sentencing Court may consider facts not admitted by the defendant or found beyond a reasonable doubt by the jury. Offense variables are properly scored by reference only to the

---

[2] Brown was well known in the community for carrying a gun.

sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *People v Roberts*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 339424) (2020); slip op at 4.

### III.  OVs 1, 3, AND 9

Defendant claims that OVs 1, 3, and 9 were all scored incorrectly because, under *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019), the trial court was not permitted to make factual findings that defendant had possession of the gun when Brown was shot, as such a finding conflicts with the jury's verdict that he was not guilty of murder and manslaughter.  The prosecution, however, argues that defendant's argument is waived because he conceded that he had a hand on the gun when it fired; Brown undisputedly was shot and killed; and Haan and Waite were in the area when the shot was fired.  Alternatively, the prosecution argues that *Beck* does not prevent the trial court from making judicial findings that defendant possessed the gun when Brown was shot or that Haan and Waite were in the area when the gun was fired, and the prosecution further argues that Defendant's *Beck* argument was waived.  We find that defendant's arguments are not waived, and that on the merits, the trial court erred by sentencing defendant based on acquitted conduct.

### A.  ACQUITTED CONDUCT

In *Beck*, our Supreme Court recently held that trial courts cannot make factual findings at sentencing based on "acquitted conduct." *Beck*, 504 Mich at 609, 629-630.[3]  Trial courts, however, retain discretion to consider uncharged conduct at sentencing.  *Id*. at 626-627.  " 'Acquitted conduct' means any 'conduct . . . underlying charges of which [the defendant] had been acquitted.' " *Roberts*, ___ Mich App at ___; slip op at 4, quoting *United States v Watts*, 519 US 148, 149; 117 S Ct 633; 136 L Ed 2d 554 (1997) (alterations in original).  Consequently, "a sentencing court must consider a defendant as having undertaken no act or omission that a jury could have relied upon in finding the essential elements of any acquitted offense proved beyond a reasonable doubt." *Roberts*, ___ Mich App at ___; slip op at 5.  But "*Beck* expressly permits trial courts to consider uncharged conduct and any other circumstances or context surrounding the defendant or the sentencing offense." *Id*.  Furthermore, *Beck* does not "preclude all consideration of the entire *res gestae* of an acquitted offense." *Id*. at ___; slip op at 6.  For example, under *Beck*, a trial court can find at sentencing that a defendant acted with reckless disregard for the safety of others even if a defendant was acquitted of a crime for similar activity requiring a specific intent *mens rea*. *Id*. at ___; slip op at 7.  Such factual findings at sentencing are permissible because they are not findings of acquitted conduct; rather, such a finding is essentially a finding of uncharged conduct.  See *id*. (holding that even though a defendant was acquitted of aiding and abetting a shooting outside a nightclub the trial court could still find that the defendant acted with reckless disregard by bringing a concealed weapon to the nightclub).

---

[3] *Beck* was decided after sentencing in this case.  Nevertheless, *Beck* applies to this case because "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." *People v McPherson*, 263 Mich App 124, 135 n 10; 687 NW2d 370 (2004) (citation and quotation marks omitted).

## B. WAIVER

When a defendant "affirmatively approve[s]" of an issue before the trial court, he may not later argue on appeal that there was error, because his prior approval waived any claim of error. *People v Jackson*, 313 Mich App 409, 420; 884 NW2d 297 (2015). "Because error requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence," a defendant's approval of a trial court decision waives the right to appeal. *People v Gonzalez*, 256 Mich App 212, 224; 663 NW2d 499 (2003), disapproved in part on other grounds 469 Mich 967 (2003) (citation and quotation marks omitted). When waiver occurs, any error is extinguished "and precludes defendant from raising the issue on appeal." *People v Carter*, 462 Mich 206, 209, 215; 612 NW2d 144 (2000).

At trial, defendant testified that he had a hand on the gun when it fired. Furthermore, defendant's trial attorney argued that defendant acted in self-defense when Brown was killed. But neither defendant nor his trial attorney ever affirmatively approved of the trial court making the factual findings that supported its OV 1, 3, and 9 findings. Specifically, defendant never conceded that he actually had possession of the gun when Brown was shot. Similarly, defendant's trial attorney also never conceded that defendant actually had possession of the gun when Brown was shot. Rather, defendant's trial attorney stated in his closing argument that Brown was shot by accident while defendant and Brown were struggling for the gun and that Brown's injury and death was caused by defendant acting in self-defense. Thus, like defendant, his trial attorney did not concede that defendant had possession of the gun when Brown was shot. Finally, defendant's trial attorney also did not waive the issue at trial. Instead, defendant's trial attorney opined that the jury acquitted defendant of manslaughter because it found that defendant acted in self-defense, not because it thought that he did not shoot Brown. [4] But this was only a statement of opinion and not an admission of fact. Thus, defendant's OV 1, 3, and 9 arguments are not waived and we must consider them on the merits. [5]

---

[4] Because manslaughter is a lesser included offense of murder, *People v Gillis*, 474 Mich 105, 137; 712 NW2d 419 (2006), an acquittal of the manslaughter charge necessarily also had the legal effect of acquitting defendant of murder. The elements of voluntary manslaughter are "(1) defendant killed in the heat of passion, (2) this passion was caused by an adequate provocation, and (3) there was no lapse of time during which a reasonable person could have controlled his passions." *People v Roper*, 286 Mich App 77, 87; 777 NW2d 483 (2009).

[5] We pause, only to note for litigants in this and other cases, that a fact of consequence to sentencing must either be proved beyond a reasonable doubt or admitted by the defendant. See *United States v Booker*, 543 US 220, 244; 125 S Ct 738, 756; 160 L Ed 2d 621 (2005) ("[W]e reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). We note that "admission by the defendant" does not necessarily require that he or she personally make a concession—a concession by a defendant's attorney fully satisfies the requirement. It is in the nature of representation that an attorney speaks for his or her client, and that what the attorney says

## D. OV 1

Defendant argues that the trial court incorrectly scored OV 1 at 25 points. We agree.

OV 1 is applicable when there is "aggravated use of a weapon." MCL 777.31. A defendant is assessed 25 points when "[a] firearm was discharged at or toward a human being," five points when "[a] weapon was displayed or implied," and zero points when "[n]o aggravated use of a weapon occurred." MCL 777.31(1)(a) and (f). "OV 1 is an offense-specific variable; therefore, in scoring OV 1, the trial court was limited to considering the sentencing offense alone." *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014) (quotation marks and citation omitted).

When scoring OV 1, the trial court found that "[t]here clearly was in the theft or the taking of this weapon or in his possession of the weapon I guess is what actually he was convicted of, a firearm was discharged at or towards a person." The record only supports a finding that a firearm was discharged at or towards Brown; no testimony supports a finding that the gun was fired at any other individual. But Brown died from his gunshot wound. Consequently, a finding that defendant shot Brown would necessarily support a finding of manslaughter because Brown died of his wound. Under *Beck* and *Roberts* such a finding is impermissible. See *Beck*, 504 Mich at 609, 629-630; *Roberts*, ___ Mich App at ___; slip op at 5-7. Consequently, the trial court erred by assessing 25 points for OV 1.

## E. OV 3

Defendant argues that that the trial court incorrectly scored OV 3 at 100. Again, we agree.

OV 3 is assessed 100 points when "[a] victim was killed" as long as the "death results from the commission of a crime and homicide is not the sentencing offense," MCL 777.33(1)(a) and (2)(b), and zero points when "no physical injury occurred to a victim," MCL 777.33(1)(f).

> Because the Legislature in MCL 777.33(2)(b) used the phrase *results* from the commission of a crime, it is clear that the defendant's criminal actions must constitute a factual cause of a death for purposes of OV 3. In determining whether a defendant's conduct is a factual cause of the result, one must ask, but for the

---

or does generally is binding. Cf MRE 801(d)(2)(C) ("A statement is not hearsay if 'The statement is offered against a party and is a statement by a person authorized by the party to make a statement concerning the subject.' ").

Defendant's attorney made a series of statements which approached, but ultimately did not constitute factual concessions which would have been relevant to sentencing, either as to waiver of a *Beck* argument or on the merits of sentencing. We note those facts here simply to reiterate that if defendant's attorney had made such concessions, they would have fully satisfied the *Lockridge*, *Apprendi*, and *Beck* line of cases regarding factual findings at sentencing. See, e.g., *People v Carter*, 462 Mich 206, 209; 612 NW2d 144 (2000) (holding that an issue was waived because of the statements of the defendant's trial attorney).

defendant's conduct, would the result have occurred?  [ (quotation marks and citation omitted).]

Like OV 1, OV 3 is offense-specific, meaning it can be "scored by reference only to the sentencing offense." *People v Biddles*, 316 Mich App 148, 165; 896 NW2d 461 (2016) (quotation marks and citation omitted).

As discussed earlier regarding OV 1, the trial court could not make any finding that defendant caused Brown's death.  See *Beck*, 504 Mich at 609, 629-630; *Roberts*, ___ Mich App at ___; slip op at 5-7.  Thus, the trial court erred by assessing 100 points for OV 100.

### F. OV 9

Defendant argues that that the trial court incorrectly scored OV 9 at 10 points.  We disagree.

OV 9 relates to the "number of victims."  MCL 777.39.  "Points assessed under OV 9 must be based solely on the defendant's conduct during the sentencing offense." *People v Rodriguez*, 327 Mich App 573, 581-582; 935 NW2d 51 (2019).  OV 9 is assessed 10 points when "2 to 9 victims . . . were placed in danger of physical injury or death."  MCL 777.39(1)(c).  OV 9 is assessed zero points when "fewer than 2 victims . . . were placed in danger of physical injury or death."  MCL 777.39(1)(d).  Furthermore, "[a] victim is one who is placed in danger of injury or death when the offense was committed." *Rodriguez*, 327 Mich App at 581.  If an individual is in "close proximity" to dangerous conduct then he or she is a victim under OV 9. *Id*. at 582 ("Evidence showed that Rojas stood outside his apartment and watched the robbery.  Because Rojas was outside his apartment, in close proximity to the robbery, the trial court properly counted Rojas as a victim."); see also *People v McGraw*, 484 Mich 120, 128; 771 NW2d 655 (2009) (holding that an individual was a victim under OV 9 because "the person near the woman when the perpetrator stole her purse was placed in danger of injury or loss of life by the armed robbery") (quotation marks and footnote omitted).

Haan and Waite were both in the apartment when Brown was shot.  They also were present when defendant fled with Brown's gun.  An individual fleeing the site of a shooting with a gun undoubtedly puts other individuals in danger.  Such a finding is permissible under *Beck* and *Roberts* because finding that defendant fled the scene with a stolen gun does not support his acquitted manslaughter charge.  See *Beck*, 504 Mich at 609, 626-627, 629-630; *Roberts*, ___ Mich App at ___; slip op at 5-7.  Haan and Waite were in close proximity to the shooting and to defendant when he fled the scene.  Thus, Haan and Waite were victims for purposes of OV 9 because they were placed in danger of physical injury or death if they had made a wrong move while defendant possessed Brown's gun and fled the scene.  Consequently, the trial court did not err by assessing 10 points for OV 9.

### IV. OV 4

Defendant argues that that the trial court incorrectly scored OV 4 at 10 points.  We agree.

OV 4 relates to "psychological injury to a victim."  MCL 777.34.  A defendant is assessed 10 points under OV 4 when "[s]erious psychological injury requiring professional treatment

occurred to a victim" and zero points when "[n]o serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a) and (c). Additionally, OV 4 is assessed 10 points "if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2).

"[P]oints for OV 4 may not be assessed solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim . . . ." *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017). Furthermore, "evidence of fear while a crime is being committed, by itself, is insufficient to assess points for OV 4." *Id*. "[A] trial court may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires that serious psychological injury *occurred* to a victim, not that a reasonable person in that situation would have suffered a serious psychological injury." *Id*. at 163 (citation and quotation marks omitted). Additionally, a victim's fear, "by itself and without any other showing of psychological harm" does not meet the serious psychological injury threshold required in OV 4. *Id*. at 164 (emphasis omitted).

In this case, when discussing OV 4, the trial court noted that the proper assessment for this variable was "a bit more difficult because the victim impact statements . . . [did not] really fit the criteria." In nevertheless assessing 10 points for OV 4, the trial court relied on the testimony of Hann being "very emotional on the stand as well as his comments about the impact of this on him as well." During trial, Haan cried after the playing of the 911 tape, he was blowing his nose during the questions proposed by the jury, and he stated that while making the telephone call to 911, he was in such a "frickin jamble." Haan did not, however, testify that he required any psychological assistance because of the incident leading to Brown's death. The evidence presented is not sufficient to support assessing any points for OV 4. Consequently, the trial court erred by assessing 10 points for OV 4.

## V. CONCLUSION

Defendant's felon in possession conviction was a class E offense. MCL 777.16m. Based on the applicable sentencing grid, defendant's prior record variable (PRV) score of 65 placed him in PRV level E. MCL 777.66. At sentencing, defendant's OV score was calculated at 160 points, placing him in OV level VI. *Id*. If defendant's OV score fell below 75 points then his sentencing guidelines range would change. See *id*. As discussed earlier, the trial court erred by assessing 10 points for OV 1, 100 points for OV 3, and 10 points for OV 4. After removing these incorrect offense variable findings and reducing defendant's OV score to 40, defendant's sentencing guidelines range changes from OV level VI to OV level IV. Thus, defendant is entitled to resentencing because the scoring error affected his sentencing guidelines range. See *People v Francisco*, 474 Mich 82, 90-91; 711 NW2d 44 (2006).

Reversed and remanded for resentencing. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Michael F. Gadola

-7-