*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NATHAN SAMUEL BOARD,

        Defendant-Appellant.

UNPUBLISHED
April 7, 2022

No. 355210
Kent Circuit Court
LC No. 19-003335-FC

Before: RIORDAN, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right following his two convictions of first-degree murder, MCL 750.316(1)(a) (premeditation), as guilty but mentally ill. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to concurrent life sentences without the possibility of parole. We affirm.

## I. BACKGROUND FACTS

This case arises out of defendant murdering Sarah Syrek's parents by bludgeoning them with a hammer. Defendant and Syrek were married, and they lived for a short time at a house owned by Syrek's parents in Michigan before defendant and Syrek moved to Arizona. Once their relationship started to deteriorate, defendant moved back to Michigan. Because he was familiar with the victims' house, defendant was able to break in using a spare key that was kept under a rock near the front door. Once he was inside, he murdered Syrek's parents with a hammer and then fled.

Defendant was interviewed by the police on two occasions. In the first interview, the police officers informed defendant of his *Miranda*[1] rights, and he waived those rights and denied that he was at the house on the night of the murders. The second interview occurred the next day and,

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

again, the police officers informed defendant of his *Miranda* rights. Defendant again waived those rights and immediately confessed to murdering Syrek's parents.

About 150 days after confessing to the murders, defendant initially was deemed incompetent to stand trial. Defendant then moved to suppress his confession, arguing that he did not knowingly waive his *Miranda* rights because he was mentally incompetent. The trial court conducted a hearing and subsequently denied defendant's motion, explaining as follows:

> While acknowledging a lack of coercion in this case, defendant relies upon the argument that he did not fully understand the consequences of his waiver of rights. But requiring every defendant to have a detailed understanding of criminal procedure would be tantamount to a requirement that counsel be present for any interview, defendant's own wishes notwithstanding. That is not the law, and a lawyerly understanding of the consequences of waiver is not necessary. The court's consideration of the totality of the circumstances must be whether the statement was freely and voluntarily made from a reasonable person's perspective.

> Defendant encourages the court to find that, because he was deemed incompetent *to assist in his defense*, he must have been incompetent when he *waived* his *Miranda* rights. However, the standards for the two determinations are decidedly different. Assisting in one's defense requires the ability to grasp the nature of the proceedings, digest legal advice and communicate openly with counsel. See MCL § 330.2020(1). A knowing and intelligent waiver of rights by the defendant before speaking with law enforcement demands less decision making. Here, defendant understood during his initial interview at the Sheriff's department that he was detained by and speaking with "the police." Further, before waiving his rights and giving his statement at the Kent County jail, he voluntarily stated his desire to "confess." Defendant is aware that he is being questioned by law enforcement, and wants "to confess" to officers at the jail, indicating an understanding that his confession will carry consequences. His testimony at the evidentiary hearing that "voices in his mind" told him to confess lacks both credibility and legal effect. The court views his testimony with skepticism given the psychiatric report admitted by defendant where the evaluator notes the "absence of AVH (audio visual hallucinations.)" Further, as explained in *Connelly*,[2] a defendant hearing "voices" does not require the suppression of the confession absent evidence of police misconduct or overreach. Importantly, the 'voices' did not [advise] the defendant to sign the waiver of rights card or proceed without counsel, which could call into question whether the defendant "knowingly" waived his rights. Following internal voices does not automatically equal an unconstitutional admission. [Citations omitted.]

Defendant then was found competent to assist in his defense and stand trial. Defendant requested a bench trial, and his confession was introduced as evidence. The trial court found

---

[2] *Colorado v Connelly*, 479 US 157; 107 S Ct 515; 93 L Ed 2d 473 (1986).

defendant guilty but mentally ill of two counts of first-degree murder. Defendant now appeals, challenging the trial court's order denying his motion to suppress his statements.

## II. DISCUSSION

"Questions of law relevant to a motion to suppress evidence are reviewed de novo." *People v Keller*, 479 Mich 467, 473; 739 NW2d 505 (2007) (quotation marks and citation omitted). "This Court reviews for clear error a trial court's factual findings in a ruling on a motion to suppress evidence." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). "A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. Finally, a trial court's ultimate decision whether to admit evidence is reviewed for an abuse of discretion. *Id*.

In *Miranda*,

> [t]he Supreme Court held that when an officer interrogates a person who is in custody, that person must be informed in clear and unequivocal terms that he has the right to remain silent and that anything that he says can be used against him in court. The Court also determined that the right to have counsel present during the interrogation is indispensable to the protection of the Fifth-Amendment right. Accordingly, a person in custody must also be advised that he has the right to consult a lawyer and have the lawyer present during interrogation, and that, if he cannot afford a lawyer, one will be appointed for him. [*Id*. at 415-416 (quotation marks and citations omitted).]

"In subsequent decisions, the [United States] Supreme Court elaborated on what is required for an effective waiver of the *Miranda* rights." *People v Daoud*, 462 Mich 621, 633; 614 NW2d 152 (2000). Such a waiver must consist of the following two elements:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decisions to abandon it. Only if the "totality of the circumstances" surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived. [*Moran v Burbine*, 475 US 412, 421; 106 S Ct 1135; 89 L Ed 2d 410 (1986).]

"The 'totality of the circumstances' approach referred to in *Moran* requires an inquiry into all the circumstances surrounding the interrogation." *Daoud*, 462 Mich at 634. This includes the suspect's "age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiting those rights." *Fare v Michael C*, 442 US 707, 725; 99 S Ct 2560; 61 L Ed 2d 197 (1979). *Fare* sets forth "an objective standard for determining whether *Miranda* rights are validly waived." *Daoud*, 462 Mich at 634.

Concerning the first element of the *Miranda* inquiry, "whether a waiver of *Miranda* rights is voluntary depends on the absence of police coercion." *Id.* at 635. Furthermore, "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Connelly*, 479 US at 170 (cleaned up).

During the hearing on defendant's motion to suppress, defendant stated that the confession "was voluntary," and he acknowledged that there was no police coercion. Similarly, on appeal, defendant concedes that his confession was "voluntary in the sense that there was no police coercion." Given this concession, we need not address the voluntariness element of the *Miranda* inquiry. See *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000) (discussing waiver).[3]

Regardless, we note that the video recording of the interviews with defendant confirms that defendant was not coerced into providing his confession.[4] Defendant stated that he would "like to confess" before the second interview actually started, and there is nothing to otherwise suggest police coercion. Therefore, given that both parties acknowledged that there was no coercion, and the video confirms that defendant voluntarily offered his confession, we are not left with a definite and firm conviction that the trial court made a mistake by finding that defendant voluntarily waived his *Miranda* rights.

Concerning the second element of the *Miranda* inquiry, "determining whether a suspect's waiver was knowing and intelligent requires an inquiry into the suspect's level of understanding, irrespective of police behavior." *Daoud*, 462 Mich at 636. "To knowingly waive *Miranda* rights, a suspect need not understand the ramifications and consequences of choosing to waive or exercise the rights that the police have properly explained to him. . . . Thus, lack of foresight is insufficient to render an otherwise proper waiver invalid." *Id.* (cleaned up). "To establish a valid waiver, the state must present evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *Id.* at 637 (cleaned up). "Whether a statement was voluntary is determined by examining police conduct, but the determination whether it was made knowingly and intelligently depends, in part, on the defendant's capacity." *People v Tierney*, 266 Mich App 687, 707-708; 703 NW2d 204 (2005).

---

[3] Defendant nonetheless argues that "the trial court omitted fully one-half of the inquiry as to voluntariness," which created a clear legal error. This argument fails. The second half of the *Miranda* "voluntariness" inquiry to which defendant refers is actually the "knowingly" element of the *Miranda* inquiry. In other words, as explained, the *Miranda* inquiry concerns two elements: (1) voluntariness, which essentially concerns the absence of police coercion or deception; and (2) knowingly, which essentially concerns awareness of the *Miranda* rights themselves.

[4] The video recording of the interviews that was initially given to this Court was difficult to view. We asked the parties at oral argument to submit a different video, and the prosecutor promptly did so. After viewing this video, we easily conclude that the police engaged in no coercion whatsoever. To the contrary, the police slowly and carefully explained the *Miranda* rights to defendant during each interview, and he signed a waiver each time.

Defendant argues that the trial court erred by not analyzing his mental capacity, his psychiatric history, or his medication history because such facts were part of the totality of the circumstances. We do not necessarily agree that the trial court disregarded these facts in its opinion, but in any event, we conclude that the trial court did not clearly err by finding that defendant knowingly waived his *Miranda* rights.

"[T]he United States Supreme Court does not equate a 'knowing and intelligent' waiver of *Miranda* rights with a wise or lawyer-inspired decision to waive those rights." *Daoud*, 462 Mich at 643. "Rather, the *only* inquiry with regard to a knowing an intelligent waiver of *Miranda* rights is . . . whether the defendant understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *Id*. at 643-644 (quotation marks and citation omitted).

The trial court was presented with the video footage of defendant's interviews, and it witnessed defendant state that he wanted to confess without being solicited, as well as his clear affirmation that he understood his *Miranda* rights. Defendant did not manifest, from his words or actions, any lack of comprehension of what was said to him or what was occurring. To the contrary, the fact that defendant denied being present in the house on the night of the murders during the first interview but then confessed to the murders during the second interview indicates that he was aware of the fact that communicating his guilt to the police could have negative ramifications. Otherwise, he presumably would not have lied to the police during the first interview. In addition, the interviewing detectives testified that defendant appeared to be coherent and able to engage in appropriate dialogue. Indeed, defendant was able to construct a coherent narrative of the night in question, along with speaking at length about his childhood and the family in which he was raised. Moreover, a medical evaluation provided that "there was no reason to suggest that [defendant] would not be capable of understanding information pertaining to this his case," even if he could not effectively assist his own counsel in his defense at trial. These facts provide ample support for the trial court's finding that defendant knowingly waived his *Miranda* rights.

Defendant suggests that because forensic examiners respectively determined in November 2018 and February 2019 that he was incompetent[5] to stand trial because he was not receiving sufficient treatment at the time, it follows that his waiver of *Miranda* rights—which occurred before this timeframe—was not knowingly made. We disagree. Whether a defendant is competent to stand trial concerns the capacity of the defendant to assist his defense. See MCL 330.2020(1). It is a separate question from whether a defendant knows about his *Miranda* rights. Thus, a defendant may be temporarily found incompetent to stand trial but nonetheless also be able to knowingly waive his or her *Miranda* rights. See, e.g., *Umana v State*, 447 SW3d 346, 357 (Tx Ct App, 2014) (ruling that the defendant properly waived his *Miranda* rights notwithstanding that he was later found incompetent to stand trial). Here, as explained previously, the totality of the

---

[5] Defendant was found competent to stand trial on April 1, 2019.

circumstances shows that defendant knowingly waived his *Miranda* rights, and the subsequent, temporary findings of incompetency do not defeat those circumstances.[6]

Accordingly, given the circumstances surrounding the waiver of his *Miranda* rights and the accompanying confession, we are not left with a definite and firm conviction that the trial court erred by finding that defendant knowingly waived those rights.

## III.  CONCLUSION

The trial court did not clearly err by finding that defendant voluntarily and knowingly waived his *Miranda* rights, and therefore it did not abuse its discretion by denying defendant's motion to suppress.  We affirm.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle

---

[6] We note that both forensic examiners opined in their respective reports that defendant "had the capacity to understand the nature and object of the proceedings against him."  If defendant had the capacity to understand the nature of the proceedings, it seemingly follows that he also had the capacity to understand basic *Miranda* rights, such as the right to remain silent.