*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MUELLER/WELLS, Minors.

UNPUBLISHED
May 16, 2024

No. 367427
Kalamazoo Circuit Court
Family Division
LC No. 2019-000335-NA

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Respondent-mother ("respondent")[1] appeals by right the trial court's order terminating her parental rights to the minor children, JM and MW. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of the death of respondent's child, TM, and the neglect and abuse of her two other children, JM and MW. According to respondent, on September 13, 2019, TM was standing on a highchair when he then fell to the ground. Respondent maintained that TM seemed to be unhurt, so she put him to bed. She later noticed that TM was not breathing normally, and she called 911. Medical personnel described TM as "mangled" when he was brought to the hospital and further stated that the fall described by respondent could not have caused all the bruises on TM's body. TM eventually passed away from his injuries, and the autopsy revealed that TM's cause of death was blunt force trauma. Respondent's romantic partner, Savajay Malory, was later arrested and pleaded no contest to a charge of manslaughter. Respondent was not arrested for any crime involving TM's death during the pendency of these proceedings. However, on September 14, 2019, petitioner, the Department of Health and Human Services ("DHHS"), filed a petition seeking the immediate removal of JM and MW and termination of respondent's parental rights.

During an examination of the children at a hospital, it was noted that JM was dirty and had bugs and flea marks all over his body. JM also had broken bones in various stages of healing. MW said that

---

[1] The respondent-father chose not to participate in the termination proceedings. The trial court terminated his parental rights, and he has not appealed the trial court's order, nor is he a party to this appeal.

her mother hit her, and she had round and straight-line bruising on her body. This case remained pending for more than 900 days, in part because of the lengthy criminal investigation involving TM's death. However, in March 2021, respondent admitted to an allegation in the petition that she caused injuries to MW when she hit MW with a belt. On the basis of respondent's admission, and because she was not charged in connection with TM's death, DHHS changed the goal from termination and adoption to reunification.

On May 23, 2022, after months of services provided through DHHS and Samaritas, a social services organization, DHHS again petitioned the court to terminate respondent's parental rights. After a hearing, the trial court concluded that DHHS established that termination was proper under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions), and MCL 712A.19b(3)(j) (reasonable likelihood of harm if returned to parent). The court also concluded that termination was in the children's best interests, and entered an order terminating respondent's parental rights.

This appeal followed.

## II. REASONABLE EFFORTS TOWARD REUNIFICATION

Respondent first contends that DHHS failed to make reasonable efforts to reunify her with JM and MW because it did not provide adequate services. We disagree.

## A. STANDARDS OF REVIEW

"In order to preserve an argument that petitioner failed to provide adequate services, the respondent must object or indicate that the services provided to them were somehow inadequate." *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022) (quotation marks and citation omitted; quotation cleaned up). Because respondent did not object or otherwise indicate that the services that DHHS provided were inadequate, the issue is unpreserved. See *id*. We review unpreserved claims that DHHS did not make reasonable efforts to reunify the family for plain error that affected substantial rights. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). An error affects substantial rights "if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. "When plain error has occurred, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; quotation cleaned up).

## B. ANALYSIS

Under MCL 712A.19a(2)(a), DHHS must make reasonable efforts to reunify the children and respondent in all cases, except when there "is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in . . . MCL 722.638." This requires DHHS to "create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *In re Hicks*, 500 Mich 79, 85-86; 893 NW2d 637 (2017). "While the [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered. This means a respondent-parent must both participate in services and demonstrate that they sufficiently benefited from the services provided." *In re Atchley*, 341 Mich App at 339 (quotation marks and citations omitted; alteration in original).

Respondent argues that she was not offered adequate services because the foster care worker's concerns about respondent being overwhelmed during parenting time were not timely raised. Respondent also contends that JM's "play therapy" was insufficient to address his behavioral issues and that family therapy would have been more useful or would have been useful in addition to play therapy. Respondent misconstrues DHHS's obligations. Under MCL 712A.18f(4), DHHS must offer *reasonable* services to help rectify the conditions that caused a child's removal, not every conceivable service. Respondent never requested family therapy, and the record reflects that DHHS offered numerous therapeutic services to JM as his speech improved, as well as parenting classes and psychological services for respondent. Respondent's problems parenting JM and MW were documented as early as October 2019, and continued throughout the case despite the provision of numerous, appropriate services by DHHS. We are, therefore, not persuaded that the failure to provide an additional service of family therapy was plainly erroneous because there is nothing to demonstrate that doing so would have changed the outcome.

Respondent also contends that DHHS arbitrarily stopped allowing her to have parenting time at the home of a relative foster parent. According to respondent, discontinuing parenting time at the relative foster parent's home was contrary to MCR 3.965(C)(7)(a), which states that "[u]nless the court suspends parenting time pursuant to MCL 712A.19b(4), or unless the child has a guardian or legal custodian, the court must permit each parent frequent parenting time with a child in placement unless parenting time, even if supervised, may be harmful to the child." Again, we disagree. The record reflects that in order to achieve reunification, it was critical for respondent to be able to parent JM and MW by herself. However, it was clear that respondent needed the continuous help of the foster parent, aides, and foster care workers to help her to control and discipline the children, which was a level of support beyond what could be provided at the relative foster parent's home. In addition, the foster care worker requested that parenting time be supervised at Samaritas because, when at the relative foster parent's home, the relative foster parent and respondent were not following the guidelines and court orders for respondent's supervised parenting time. And respondent continued to receive parenting time with the children after this decision, just not at the relative foster parent's home.

Respondent also asserts that the foster care worker did not try to find another relative placement in the state of Indiana for the children to minimize the trauma caused by this initial relative foster parent's decision that she could no longer foster JM and MW. The record reflects, however, that the foster care worker attempted to place the children with relatives identified by respondent in Indiana. However, after doing so, respondent's attorney argued that moving the children to Indiana would be "a disaster as far as visitation with mother." Respondent also disclosed that one of the relatives was abusive and an alcoholic. Accordingly, we reject respondent's claim that DHHS should have done more to place the children with relatives in Indiana.

In sum, respondent has not shown that the trial court plainly erred when it found that DHHS made reasonable efforts to reunify the family by providing adequate services to respondent and the children.

## III. LEGALLY ADMISSIBLE EVIDENCE

Next, respondent argues that the trial court abused its discretion by relying on inadmissible evidence to support its decision to terminate respondent's parental rights. We disagree.

## A. STANDARDS OF REVIEW

To properly preserve an evidentiary issue for appellate review, a respondent must object to the admission of the evidence in the trial court. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412, 421 (2011). Because respondent did not object to the evidence admitted in the trial court, she has failed to preserve this issue for appeal. See *id*. Accordingly, we review this issue for plain error affecting substantial rights. *In re Utrera*, 281 Mich App at 9.

## B. ANALYSIS

When "termination is sought on the basis of grounds new or different from those that led the court to assert jurisdiction over the children, the grounds for termination must be established by legally admissible evidence." *In re Jenks*, 281 Mich App 514, 516; 760 NW2d 297 (2008), citing MCR 3.977(F)(1)(b). In *In re Gilliam*, 241 Mich App 133, 137; 613 NW2d 748 (2000), for example, we concluded the trial court abused its discretion when it terminated the respondent-father's parental rights on the basis of hearsay statements regarding his drug use and anger management problems.

In this case, respondent argues that DHHS presented inadmissible evidence that respondent did not have safe and stable housing for the children. Specifically, respondent takes issue with evidence presented about her fiancé, Mykal Gerou, possessing a handgun; that Gerou had a fistfight with another man in front of a child; that there was domestic violence between respondent and Gerou; and that Gerou showed a high level of aggression. Respondent argues that the foster care worker's concerns about Gerou were based, in part, on respondent's psychological evaluation, which was inadmissible hearsay. We disagree. Respondent's statements about her conduct with Gerou and his reaction to it was not hearsay, because a party's own statement offered against that party is not hearsay under MRE 801(d)(2). Moreover, counsel for respondent cross-examined the foster care worker about respondent's psychological evaluations and counseling reports, and appellate counsel relies on them in respondent's appeal brief. Accordingly, respondent has affirmatively waived this issue. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (concluding that the defendant waived the issue of jury instructions "[b]ecause defense counsel approved the trial court's response . . . .").

The foster care worker also described Gerou's aggression during an incident when Gerou screamed at her, using profanities and derogatory language. In addition, when the foster care worker conducted an inspection of the trailer that respondent was renting with Gerou, she testified she saw that Gerou was wearing a "handgun on his hip." When asked about Gerou, the foster care worker also stated that an investigation was initiated in the fall of 2021 because Gerou got into a fistfight with someone in front of a child. However, to the extent some of this testimony may have included inadmissible hearsay, respondent is unable to show plain error because the trial court did not conclude that respondent's housing was inappropriate because of Gerou. Rather, the trial concluded that respondent's housing was not stable because she lived at a Chippewa reservation in the Upper Peninsula where Gerou was a member of the tribe. Respondent was not a member of the Chippewa tribe, and she had no right to stay on the reservation after she and Gerou broke up. The trial court found that respondent chose to leave her children and move hours away because of Gerou instead of trying to remain close to the children. This information was from respondent's own statements and was, therefore, not hearsay. See MRE 801(d)(2).

Respondent also argues that DHHS presented inadmissible evidence that she "sexualized" her children. The trial court did conclude that the children demonstrated inappropriate sexual behaviors and

that respondent allowed it to continue without correction. While some evidence to this effect may have been inadmissible hearsay, the record shows that the court's finding was also supported by admissible evidence—namely, the direct observations of witnesses. Thus, the trial court's conclusion about respondent failing to correct the sexual behaviors of the children was not plainly erroneous, and furthermore, the court made a number of other findings in support of termination that were in no way dependent on its finding regarding the sexual behaviors of the children.

In sum, respondent has failed to establish that the trial court plainly erred by relying on inadmissible evidence to support its decision to terminate respondent's parental rights.

## IV. STATUTORY GROUNDS

Lastly, respondent argues that the trial court clearly erred when it terminated her parental rights because her mental-health records showed that she consistently attended counseling sessions, was addressing her anger issues and her understanding of the children's needs, attended parenting time, overcame her substance-abuse issues, and had employment throughout the case. Respondent further asserts that the record evidence did not support the conclusion that respondent would not improve if given more time. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App at 343. Clear error occurs "if the reviewing court has a definite and firm conviction that a mistake has been committed . . . ." *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004). "When applying the clear-error standard in parental termination cases, regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020) (quotation marks and citation omitted). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

## B. ANALYSIS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(j), which states that termination is proper when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." Termination is appropriate under MCL 712A.19b(3)(j) if there is a potential of physical or emotional harm to the children. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

The record shows that respondent was at risk of homelessness during the termination trial because she could not remain on the Chippewa reservation after ending her relationship with Gerou. Respondent admitted to the foster care worker that she would have no choice but to live with friends if she did not repair her relationship with Gerou, and her friends would not be able to accommodate the children. As the trial court observed, respondent would not be able to establish safe and secure housing for the children on her own within a reasonable time. Because respondent relied on significant others to provide housing for her, she was continually placing herself at risk of homelessness, which was also a risk to the children.

Ample other evidence also showed that the children would be at risk of harm if returned to respondent's care. In light of JM's and MW's inappropriate sexual behaviors around each other, returning the children to the same home without appropriate supervision would not have been healthy for either child. In addition, although respondent broke up with Gerou, she wanted the children to spend time with him anyway. They spent parenting time together after respondent gave birth to a new baby, and JM and MW began to call Gerou "dad" almost immediately. Respondent allowed this even though both children had significant emotional and developmental attachment problems. Not only was this confusing when the children were waiting for their biological father to visit them, the children presumably had not yet learned that their new "dad" was no longer respondent's partner.

JM and MW also both had significant behavioral problems on days that they would have to attend parenting time with respondent. JM began to urinate and defecate on himself before, during, and shortly after visits, and he had more severe and violent behavioral problems at school because of parenting time. MW also became more defiant on days that she needed to attend parenting-time visits with respondent. Indeed, the children's behaviors only improved when the parenting-time visits were cut in half so that the children only had to see respondent once per week. In light of the lack of benefit that respondent showed from any of the services provided, as well as evidence of the children's anxiety and discomfort when interacting with her, there was a very high risk of harm to the children if they were returned to her care. See MCL 712A.19b(3)(j).[2]

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani

---

[2] Respondent has not challenged on appeal the trial court's finding that termination was in the children's best interests. Thus, we may presume that the trial court did not clearly err in that finding. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341; 612 NW2d 407 (2000) ("The failure to brief the merits of an allegation of error is deemed an abandonment of an issue."). Nevertheless, having reviewed the record, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the children's best interests. See *In re LaFrance*, 306 Mich App 713, 732-733; 858 NW2d 143 (2014). The record evidenced the death of one of respondent's children; unfavorable psychological evaluations; inappropriate parenting techniques; involvement in domestic violence; engaging in questionable relationships; and sexual, physical, and emotional abuse. Further, respondent had an unfavorable visitation history, and both children had an insecure attachment with her. The children needed permanence and stability and could no longer wait for respondent to rectify the conditions that supported termination.